Richard A. Lapping (SBN: 107496)
**TRODELLA & LAPPING LLP**
540 Pacific Avenue
San Francisco, CA 94133
Telephone: (415) 399-1015
Facsimile: (415) 651-9004
Email: Rich@TrodellaLapping.com

Tracy Green (SBN: 114876)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, Suite 2400
Oakland, CA 94607-4028
Telephone: (510) 834-6600
Facsimile: (510) 834-1928
Email: tgreen@wendel.com

[Proposed] Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No.: 19-41025-WJL-11 |
| ANKA BEHAVIORAL HEALTH, INCORPORATED | Chapter 11 |
| Debtor. | **DEBTOR'S MOTION FOR APPROVAL OF STIPULATION FOR INTERIM AND FINAL ORDER (I) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND BANKRUPTCY RULE 4001 AND (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363** |
| | Date: May 9, 2019<br>Time: 3:30 p.m.<br>Place: Courtroom 220<br>1300 Clay Street<br>Oakland, CA<br>Judge: The Hon. William J. Lafferty III |

ANKA Behavioral Health, Inc. ("ANKA" or the "Debtor"), as debtor and debtor-in-possession in the above-captioned Chapter 11 Case (the "Chapter 11 Case"), hereby submits this Motion (the "Motion") for Approval of Stipulation for Interim and Final Order (i) Authorizing

Debtor's use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Bankruptcy Rule 4001 and (ii) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361and 363 (the "Stipulation"). The Stipulation is attached hereto as **Exhibit A**.

## INTRODUCTORY STATEMENT

By this Motion, the Debtor seeks approval from the Court to enter into and perform its obligations under a proposed Stipulation with Bank of Guam (the "Bank"), which has pre-petition perfected liens on all or substantially all of Debtor's property, including all of its accounts receivable. No other party has an interest in Debtor's accounts receivable. Without the ability to use cash collateral, debtor's substantial operations will come to a halt, potentially endangering the health of numerous patients under the care of debtor's employees.

## JURISDICTION

The Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

ANKA is a 501(c)(3) non-profit behavioral healthcare corporation that has operated since 1973. It has earned national recognition as a result of its ability to design, implement, and operate exceptional, innovative programs. Over the course of a year ANKA serves nearly 15,000 individuals and their families and generally has 200-300 clients at any one time at over 50 small scale facilities that it operated throughout California and one in Michigan. ANKA's residential and Intensive Outpatient Programs (IOP) are located in Contra Costa, Alameda, Solano, Sonoma, Santa Clara, Fresno, San Luis Obispo, Santa Barbara, Ventura, Los Angeles, and Riverside Counties and there is a veteran's facility in Michigan. The facilities are all single-family homes situated in quiet neighborhoods. They have up to 16 beds with men and women in the same location. Rooms are shared between two clients. A comfortable bed and a dresser or closet are provided for each client at all locations.

ANKA employs almost 1,000 professional and specialized staff members and independent contractors across California and Michigan. Its philosophy is to treat the whole person by fully

integrating care of both mind and body, always using clinically-proven, psycho-social models designed to promote health and wellness, while containing costs. It offers the best and newest treatment methods for those seeking help in a warm and supportive environment. ANKA provides crisis residential treatment, transitional residential treatment, long-term residential treatment, outpatient services, forensic programs and vocational services. Its specific programs include the following:

- Crisis Residential Treatment for Children & Adults with Co-Occurring Disorders
- Substance Use Treatment Programs
- Residential Programs for Children & Adults with Intellectual Disabilities
- Care/Drop-In Centers
- Forensic Outpatient & Residential Services
- Independent & Supportive Housing
- Mental Health Rehabilitation Centers
- Veterans Services
- Assertive Community Treatment/Full Service
- Partnership Programs
- Transitional Residential for Co-Occurring Disorders
- Eating Disorder Treatment
- Homeless Continuum of Care
- Day Programs/Outpatient Services
- Vocational Services
- Emergency Shelter Services
- U.S. Probation Mental Health Assessment
- Outreach & Engagement

ANKA commenced this bankruptcy case so that it can undertake an orderly wind down of all of its residential and outpatient treatment programs. It is working closely with the California

Department of Developmental Services, regional centers, and county mental health agencies to ensure that all of the needs of the patients are met. ANKA's goal is to transition all of the locations to other providers without closing any facilities to ensure that there is no interruption in patient services, and that the employees continue to work at the same locations since they have the knowledge and relationships with the clients and patients. The Company is committed to an orderly and complete transition of its patients to alternate providers before terminating any service or closing any facility.

The bankruptcy was necessitated because some vendors threatened to discontinue services, and without those services, ANKA could not operate its business. ANKA's financial difficulties primarily arose because of unexpected losses associated with ANKA's expansion into new developmental service programs. The licenses for the new locations were unexpectedly delayed due to new regulations and could not be operated for significant periods while expenses accrued immediately. The commencement of this bankruptcy case provides ANKA with an ability to orderly transfer its patients to other providers while making current payments to creditors.

ANKA anticipates that it will have accomplished the transfer of its patients to new providers within the next 4-6 weeks, subject to certain regulatory considerations and approvals.

ANKA has two wholly owned subsidiaries, AP&H, Inc. and Anka MHSA Holding Company, LLC (the "Subsidiaries"), each of which own certain real estate that ANKA leases from them. The Subsidiaries have not filed and are not expected to file bankruptcy petitions.

The Debtor has ten separate loans from the Bank which are secured by all or substantially all of its assets as well as by real property owned by the Subsidiaries. The total principal amount borrowed was $8,898,900 and as of the petition date, the aggregate principal amount owed to the Bank is $7,065,996.00, plus accrued interest.

## THE PROPOSED STIPULATION

The Stipulation contains the following material provisions:

1.     Debtor acknowledges the validity of the debt to the Bank and of the liens, and all related terms and documents. Specifically, the Debtor acknowledges and admits that as of the Petition Date, (i) the Debtor is truly and justly indebted to the Bank pursuant to the Credit

Agreements, Security Agreements and related agreements and documents (collectively, the "Bank Lien Documents"), without defense, counterclaim or offset of any kind in the aggregate principal amount of $8,898,900 plus accrued and unpaid interest thereon accruing after the Petition Date (accruing at the applicable default rate of interest from and after April 29, 2019) and fees and expenses incurred prior to the Petition Date and/or now or hereafter due under the Bank Lien Documents (the "Bank Lien Indebtedness"), (ii) the Bank Lien Indebtedness is a legal, valid and binding obligation of the Debtor, enforceable in accordance with the terms of the Bank Lien Documents, (iii) the Bank Lien Documents constitute valid, binding and non-avoidable agreements evidencing secured claims against the Debtor to the extent of the Collateral, (iv) the Bank has filed UCC-1 financing statements evidencing its properly perfected, lien on the Collateral (in addition to any additional liens held by the Bank), and the Bank Lien is a valid, perfected, enforceable security interest in and continuing lien on all the Collateral, (v) the Bank Lien was granted to, or for the benefit of, the Bank for fair consideration and reasonably equivalent value, (vi) the Bank Lien is not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (vii) the Bank holds an allowed claim against the Debtor's estate in the full amount of the Bank Lien Indebtedness (all collectively, the "Debtor Stipulations"). (Stipulation, Recital H.)

2. The Debtor is authorized, but not directed, to use property constituting cash collateral of the Bank only for the purposes permitted by, and up to the amounts set forth in, the Budget attached to the Stipulation as Exhibit A (the "Budget"),[1] category for category and month for month (meaning that the amount set forth for any particular category in a particular month shall limit spending for that category in that month), unless otherwise consented to in writing by the Bank or authorized by further Order of this Court. The Debtor is further authorized to spend in the aggregate up to a 5% variance from the gross amount sought to be expended in the Budget,

[1] At the time of filing this Motion, the Budget is still in draft form to be discussed between the Debtor and the Bank before finalizing. A revised budget, or confirmation that this Budget is final, will be filed with the Court before the hearing.

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

category for category and month for month, for actual and necessary costs and expenses that must be expended to preserve the assets of the estate.  (Stipulation, ¶ 3.)

3.      No cash collateral may be used to pay any professional fees or expenses of any party in interest, including without limitation, the Debtor or any Committee, to object to, contest in any manner or otherwise challenge, the validity, amount, perfection or enforceability of the Bank Lien Documents, the Bank Lien Indebtedness, the Bank Lien or any other liens, claims or security interests securing the Bank Lien Indebtedness, to contest, challenge, limit or modify the right of the Bank to credit bid its claim in this case, to attempt to prevent, hinder or otherwise delay the Bank from realization upon any Collateral other than to seek a determination as to whether an event of default has occurred hereunder, to undertake any formal discovery proceedings in anticipation of any of the foregoing, or to materially support any such efforts.  (Stipulation, ¶ 3.)

4.      As set forth in the Budget, and subject to actual receipt of income, Debtor shall remit to the Bank funds in excess of projected uses on a weekly basis on or before the second business day of the following week.  On or before such date, the Debtor shall provide to the Bank a true and accurate report of all income and expenditures for the foregoing week.  (Stipulation, ¶ 6.)

5.      In accordance with sections 361 and 363 of the Bankruptcy Code, as adequate protection for the Debtor's use of property constituting the respective the Bank's cash collateral, the Debtor grants to the Bank replacement liens on all assets of the Debtor, wherever located, now owned or hereafter acquired, and the proceeds thereof that are or have been acquired, generated or received by the Debtor subsequent to the Petition Date (including any causes of action for unauthorized transfers made post-petition and proceeds thereof but excluding avoidance actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof) (the "Replacement Liens"), and the Bank shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.  (Stipulation, ¶ 7.)

6.      The Replacement Liens shall be subject and subordinate to a Carve Out (the "Carve Out"), which shall comprise the following: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) in

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

the Chapter 11 Case; (ii) all compensation and expenses of a trustee approved by the Court under Bankruptcy Code section 726(b) up to and not to exceed $50,000.00 in aggregate; (iii) the expenses of the patient care ombudsman appointed in this Chapter 11 case in an aggregate amount not to exceed the lesser of the amount provided in the Budget or $30,000.00t; and (iv) the aggregate amount of the fees and expenses approved by the Bankruptcy Court pursuant to Bankruptcy Code sections 330 or 331 of Professionals (including any chapter 11 trustee's professionals) in an aggregate amount not to exceed the lesser of $250,000.00 or the amounts reflected in the DIP Budget, subject to increase upon reconsideration by the Bank and the professionals if a cap of $250,000 proves insufficient due to circumstances in the Chapter 11 Case. Without limiting the foregoing, the Carve-Out may only be used for the payment of fees and expenses of Professionals only to the extent allowed by order of the Bankruptcy Court in the Chapter 11 Case, and in the event of the occurrence of the Termination Date, the Carve-Out shall be reduced and limited to the lesser of post-petition fees and expenses accrued on or before the Termination Date plus $25,000.00.  (Stipulation, ¶ 8.)

7.    The Replacement Liens are deemed perfected without the necessity for filing or executing documents which might otherwise be required under non- bankruptcy law for perfection of said security interests.  (Stipulation, ¶ 9.)

8.    In addition to the Replacement Liens, the Bank is granted an administrative expense claim under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code, in the amount by which the adequate protection afforded above proves to be inadequate and any post-petition diminution in value of the Collateral. This administrative claim shall be allowed and have superpriority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 of the Bankruptcy Code, except for the Carve-Out, and shall be payable from and have recourse to all pre- petition and post-petition property of the Debtor and all proceeds thereof, but excluding avoidance actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof.  (Stipulation, ¶ 10.)

9.    The Debtor shall be deemed to have forever waived, and released any and all rights against the Bank to pursue, bring or prosecute any and all "claims" (as defined in the Bankruptcy

Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights or rights of reduction with respect to the Bank Lien Documents and/or Bank Lien, including (i) any recharacterization, subordination, avoidance, "lender liability" or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or otherwise, and (ii) any right or basis to challenge or object to the amount, validity, characterization or enforceability of the Bank Lien Indebtedness, the Bank Lien Documents and/or the Bank Lien. The Bank will not be required to file a proof of claim in the Chapter 11 case or successor case for any claim allowed herein. (Stipulation, ¶ 11.)

10. There shall not be entered in this proceeding, or in any successor case, any order which grants any security or other lien, pursuant to section 364(d) of the Bankruptcy Code or otherwise, on any portion of the Collateral that is entitled to any priority status that is superior to or *pari passu* with the Bank Lien, or the Replacement Liens. (Stipulation, ¶ 12.)

11. The estate's authority to use cash collateral is conditional upon the Subsidiaries granting liens against all of their real properties and substantially all personal property to secure all of the Bank Lien Indebtedness and entering into an agreement with the Bank governing the marketing and liquidation of their assets in form acceptable to the Bank, approval of which shall not be unreasonably withheld or delayed. (Stipulation, ¶ 13.)

12. The Stipulation shall be binding upon the Debtor and on all parties in interest, including any Committee, unless such Committee or any other party in interest other than the Debtor, including any Chapter 11 trustee appointed, (or if the Chapter 11 case is converted to a case under Chapter 7 prior to the expiration of the Challenge Period (as defined below), the Chapter 7 trustee in such successor case) commences an action or proceeding challenging, seeking to avoid or otherwise objecting to the Bank Lien Indebtedness or the Bank Lien, including any cause of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action (a "Challenge"), within ninety (90) calendar days from the date of entry of a final order approving this Stipulation, or with respect to a Chapter 7 trustee only, upon the conversion of the Chapter 11 case to Chapter 7, to the extent that any period to investigate the facts and commence litigation as a representative of the estate has not expired,

Case: 19-41025    Doc# 38    Filed: 05/07/19    Entered: 05/07/19 16:34:44    Page 8 of 35

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

8

ninety (90) days from the date a Chapter 7 trustee is appointed (whether on an interim or final basis) (the "Challenge Period"). After expiration of the Challenge Period, all such Challenges and objections by any party shall be deemed to be forever barred in this case or any successor case. The Challenge Period may only be extended with the written consent of the Bank or by order of the Court, once, for cause shown. Nothing in the Stipulation shall be construed to grant standing on or otherwise authorize any party in interest to bring any Challenge or other claim on behalf of the Debtor's estate against either the Bank, and the Bank hereby reserves all rights to challenge and object to such standing or authority. (Stipulation, ¶ 18.)

13.     Unless extended by further stipulation or order, the Debtor's right to use cash collateral terminates on the earlier of

(a) July 31, 2019,

(b) five (5) business days following the Debtor's receipt from the Bank of written notice that the Debtor is in default of the Stipulation, which default remains uncured three (3) business days following receipt of such notice (the "Cure Period"), provided that the Court later enters an order determining that the Debtor is in default if default is contested by the Debtor in a motion or application filed with the Court, which shall be filed within the Cure Period and may be heard upon five (5) business days' notice to the Bank and any affected parties in interest or at the Court's convenience,

(c) upon entry of an order of the Court finding that the Debtor is in default of the Stipulation,

(d) the effective date of any plan confirmed in this case,

(e) unless filed by the Debtor, in which case termination will occur upon the filing of the motion, the date of entry of an order dismissing this Chapter 11 case or converting this Chapter 11 case to a Chapter 7 case, or appointing a Chapter 11 trustee or examiner in the Chapter 11 case,

(f) the date of entry of an order granting relief from the automatic stay to any party for any purpose in respect of any of the Collateral,

(g) the entry of an order reversing, revoking, modifying, amending, staying, or

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

rescinding this Stipulation and Order, or

> (h) either of the Subsidiaries becomes a debtor in a case under any chapter of the Bankruptcy Code (the "Termination Date").

On the Termination Date, the Bank's consent to use cash collateral shall be deemed withdrawn and the Debtor may not continue to use cash collateral except upon the Bank's written consent (which may be withheld for any reason, with or without cause) or further order of the Court. Except for the estate's authority to use cash collateral, all other terms and conditions of this Stipulation and Order shall survive and shall continue in full force and effect notwithstanding. (Stipulation, ¶ 23.)

14. If the Debtor is in default of the Stipulation and the default is not cured within the Cure Period, then from and after the day following the Cure Period, the Bank shall be granted relief from the automatic stay provided in Bankruptcy Code section 362(a) to foreclose its liens and take possession of its Collateral effective at close of business on the third business day after the Bank's filing a notice of such uncured default and relief from stay with the Court and serving such notice upon the Debtor and all creditors and parties in interest of record; provided, however, that if the Debtor timely contests such default as provided above, then such relief from stay shall be effective upon entry of an order of the Court finding that the Debtor is in default of the Stipulation, without further notice or action. In such event, within a reasonable time of written request, the Debtor shall assemble the Bank's Collateral and make it available to the Bank, including by providing access to all books and records reasonably necessary to enable the Bank to enforce its security interests, including collecting accounts receivable or otherwise. (Stipulation, ¶ 24.)

15. Debtor's and the estate's ability to surcharge any of the Bank's Collateral under section 506(c) of the Bankruptcy Code or any similar federal or state law is hereby waived and released during the period that the debtor is authorized to use cash collateral. (Stipulation, ¶ 26.)

## COMPLIANCE WITH THE GUIDELENES FOR CASH COLLATERAL AND FINANCING MOTIONS AND STIPULATIONS

Certain terms of the Stipulation are terms that are identified in the Court's *Guidelines for Cash Collateral and Financing Stipulations* (the "Guidelines") as provisions that the Court will

not ordinarily approve. For the reasons set forth herein, the Debtor submits that such terms are necessary and appropriate in the circumstances of this case.

_Guidelines Provision 2_. _Provisions or findings of fact that bind the estate or all parties-in-interest with respect to the validity, perfection or amount of the prepetition secured party's lien or debt._

As discussed in paragraph 1 of the material terms section above, Recital H binds the Debtor with respect to the validity, amount and pefection (but not the priority) of the Bank's loans and liens. But as also discussed in paragraph 12 above, Paragraph 18 of the Stipulation provides for a Committee or a Trustee to challenge the Bank's debt or liens, provided it does so within the 90-day Challenge Period. The Debtor and counsel have reviewed the UCC filings and the Debtor, having entered into the loans and received the financing, has no basis to deny having made its commitments.

_Guidelines Provision 5_. _Waivers of, or grants of lien on, rights under Bankruptcy Code §506(c), unless the waiver or grant is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds._

Paragraph 26 of the Stipulation provides that the Debtor will waive its right to surcharge the Bank for administrative costs or expenses during the period that Debtor is authorized to use cash collateral, but not otherwise.

_Guidelines Provision 7_. _Releases of, or limitations on, liability for the creditor's alleged prepetition torts or breaches of contract._

The Debtor knows of no basis to make any such allegations against the Bank. Accordingly, it is releasing claims that it does not believe that it has.

_Guidelines Provision 8_. _Waivers of, or liens on any of the estate's rights arising under Bankruptcy Code §§ 544, 545, 547, 548, 549, 553, 723(a), or 724(a), or the proceeds of any such rights._

As discussed in paragraph 12 above, Paragraph 18 of the Stipulation provides for a Committee or a Trustee to challenge the Bank's debt or liens, including under the enumerated sections above, provided it does so within the 90-day Challenge Period. Debtor has not otherwise waived the enumerated sections or granted lien rights to them.

_Guidelines Provision 9_. _Automatic relief from the automatic stay upon default, conversion to Chapter 7, or appointment of a trustee._

Paragraph 24 of the Stipulation provides for shortened notice to seek a lifting of the automatic stay to permit the enforcement of Bank's remedies under the Stipulation. But Court

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

supervision remains intact.

_Guidelines Provision 10._     _Waivers and modifications of the procedural requirements for foreclosure mandated under applicable non-bankruptcy law._

None as to the Debtor.  Paragraph 13 of the Stipulation requires the Subsidiaries to enter into an agreement with the Bank governing the marketing and liquidation of their assets, but no waivers or modifications of foreclosure procedures.

### THE COURT SHOULD AUTHORIZE THE DEBTOR'S ENTRY INTO AND PERFORMANCE OF THE STIPULATION

Bankruptcy Code Section 363(c)(2) provides that:

> The trustee may not use, sell or lease cash collateral under paragraph
>
> (1) of this subsection unless —
>
> (A) each entity that has an interest in such cash collateral consents;
>
>      or
>
> (B) the court, after notice and a hearing, authorizes such use, sale,
>
>      or lease in accordance with the provisions of this section.

Pursuant to the Stipulation, the Bank has consented to Debtor's use of cash collateral.  Thus under the foregoing provision, the Debtor is authorized to use cash collateral.  Accordingly, the court should authorize debtor's entry into and performance under the stipulation.

Bankruptcy Code Section 361 provides that:

> When adequate protection is required under section 362, 363, or 364
>
> of this title of an interest of an entity in property, such adequate
>
> protection may be provided by—
>
>      (1) requiring the trustee to make a cash payment or periodic
>
>      cash payments to such entity, to the extent that the stay under
>
>      section 362 of this title, use, sale, or lease under section 363 of
>
>      this title, or any grant of a lien under section 364 of this title
>
>      results in a decrease in the value of such entity's interest in such
>
>      property;
>
>      (2) providing to such entity an additional or replacement lien

to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

Pursuant to the Stipulation, the Debtor has agreed to make periodic cash payments as funds are available. Debtor has also agreed to grant an additional lien in Debtor's post-petition receivables to replace the use of prepetition collateral expended under the Stipulation. Finally, Debtor submits that the other provisions granted to Bank are necessary for Bank's realization of the indubitable equivalent of its interest in its collateral.

## CERTIFICATION

The undersigned counsel for the Debtor has read the Motion; to the best of my knowledge, information, and belief, formed after reasonable inquiry, the terms of the relief sought in the Motion are in conformity with the Court's Guidelines for Cash Collateral and Financing Motions and Stipulations, except as set forth herein. I understand and have advised the Debtor that the Court may grant appropriate relief under Bankruptcy Rule 9024 if the Court determines that a material element of the Motion was not adequately disclosed in the Introductory Statement.

Dated: May 7, 2019        TRODELLA & LAPPING LLP
                       WENDEL, ROSEN, BLACK & DEAN LLP

                       By:    /s/ Richard A. Lapping
                             Richard A. Lapping
                             [Proposed] Attorneys for Debtor,
                             ANKA Behavioral Health, Incorporated

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

**EXHIBIT A**

1  Richard A. Lapping (SBN: 107496)
   TRODELLA & LAPPING LLP
2  540 Pacific Avenue
   San Francisco, CA 94133
3  Telephone: (415) 399-1015
   Facsimile: (415) 651-9004
4  Email: Rich@TrodellaLapping.com

5  Tracy Green (SBN: 114876)
   WENDEL, ROSEN, BLACK & DEAN LLP
6  1111 Broadway, Suite 2400
   Oakland, CA 94607-4028
7  Telephone: (510) 834-6600
   Facsimile: (510) 834-1928
8  Email: tgreen@wendel.com

9  Proposed Attorneys for Debtor

10

11                    **UNITED STATES BANKRUPTCY COURT**

12         **NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION**

13

14  In re:                                    | Case No.:

15  ANKA BEHAVIORAL HEALTH, INC.              | Chapter 11

16              Debtor.                        |
                                              | Date:
17                                            | Time:
                                              | Courtroom:
18                                            |
                                              | Judge:
19

20

21      **STIPULATION (I) AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL**
22  **PURSUANT TO 11 U.S.C. § 363 AND BANKRUPTCY RULE 4001 AND (II) GRANTING**
        **ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361 AND 363**
23
        This Stipulation (this "Stipulation") is entered into by and among ANKA Behavioral
24
    Health, Inc. (the "Debtor"), the above-captioned debtor and debtor- in-possession, and Bank of
25
    Guam (the "Bank"), through their respective attorneys.
26
                                    **RECITALS**
27
        A.      WHEREAS, on April 30, 2019 (the "Petition Date"), the Debtor filed a voluntary
28
    petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")

in the United States Bankruptcy Court for the Northern District of California (this "Court");

B.     WHEREAS, prior to the Petition Date, the Debtor entered into the secured credit agreements identified on attached **Exhibit A** (each, a "Credit Agreement") in favor of the Bank, in the original aggregate principal amount of $8,898,900. Each of the Credit Agreements is secured by and a Security Agreement (each a "Security Agreement"), executed by the Debtor in favor of the Bank, whereby each Credit Agreement is secured by (the "Bank Lien") certain Collateral (as defined in the Security Agreements) consisting of all assets of the Debtor of any kind or nature, including but not limited to all accounts receivable, claims, choses in action, policies and the proceeds of policies for insurance of every kind, general intangibles, equipment, furniture and fixtures (the "Collateral");

C.     WHEREAS, the Bank is further secured by guarantees by AP&H, Inc., a California corporation and by liens against certain real property and other assets owned by AP&H, Inc.;

E.     WHEREAS, AP&H, Inc. and Anka MHSA Holding Company, LLC, a California limited liability company, are wholly-owned subsidiaries of the Debtor;

F.     WHEREAS, the agreement of AP&H, Inc. and Anka MHSA Holding Company, LLC to cooperate with the Bank in the orderly liquidation of their assets is material consideration for the Bank's agreement to this Stipulation;

G.     WHEREAS, notice of certain defaults with respect to each loan was provided to the Debtor on April 29, 2019, and received on the same date;

H.     WHEREAS, the Debtor admits, stipulates, acknowledges and agrees that as of the Petition Date, (i) the Debtor is truly and justly indebted to the Bank pursuant to the Credit Agreements, Security Agreements and related agreements and documents (collectively, the "Bank Lien Documents"), without defense, counterclaim or offset of any kind in the aggregate principal amount of $7,065,996.00, plus accrued and unpaid interest thereon accruing after the Petition Date (accruing at the applicable default rate of interest from and after April 29, 2019) and fees and expenses incurred prior to the Petition Date and/or now or hereafter due under the Bank Lien Documents (the "Bank Lien Indebtedness"), (ii) the Bank Lien Indebtedness is a legal, valid and binding obligation of the Debtor, enforceable in accordance with the terms of the Bank Lien

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

Documents, (iii) the Bank Lien Documents constitute valid, binding and non-avoidable agreements evidencing secured claims against the Debtor to the extent of the Collateral, (iv) the Bank has filed UCC-1 financing statements evidencing its properly perfected lien on the Collateral (in addition to any additional liens held by the Bank), and the Bank Lien is a valid, perfected, enforceable security interest in and continuing lien on all the Collateral, (v) the Bank Lien was granted to, or for the benefit of, the Bank for fair consideration and reasonably equivalent value, (vi) the Bank Lien is not subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (vii) the Bank holds an allowed claim against the Debtor's estate in the full amount of the Bank Lien Indebtedness (all collectively, the "Debtor Stipulations"); and

I.     WHEREAS, the Debtor and The Bank desire to enter into this Stipulation permitting the Debtor to use property constituting the Bank's cash collateral in order to safely and expeditiously transfer responsibility for the care of Debtor's patients and clients to other providers, and subject to the approval of this Court and the other terms and conditions set forth herein;

NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED:

1.     The above recitals are hereby incorporated into this Stipulation as if fully set forth herein.

2.     In accordance with to section 363 of the Bankruptcy Code, the Debtor is hereby authorized, but not directed, to use cash collateral of the Bank upon the terms and subject to the conditions set forth herein, and the Bank hereby consents to such use subject to the terms and conditions contained herein.

3.     The Debtor is authorized, but not directed, to use property constituting cash collateral of the Bank only for the purposes permitted by, and up to the amounts set forth in, the Budget attached hereto as Exhibit A (the "Budget"), category for category and month for month (meaning that the amount set forth for any particular category in a particular month shall limit spending for that category in that month), unless otherwise consented to in writing by the Bank or authorized by further Order of this Court. The Debtor is further authorized to spend in the

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

3

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

aggregate up to a 5% variance from the gross amount sought to be expended in the Budget, category for category and month for month, for actual and necessary costs and expenses that must be expended to preserve the assets of the estate. The Budget may be modified from time to time at the request of the Debtor and upon the prior written approval of the Bank and prior written notice to counsel for the Official Committee of Unsecured Creditors, if any (the "Committee"). Notwithstanding the foregoing, nothing contained herein shall impose an obligation on the Bank to agree to such modifications, and the Bank may, in its discretion, decline to permit modification for any or no reason. The Debtor may utilize cash collateral to make payments authorized under other orders entered by this Court (provided that such payments are set forth in the Budget), including for payment of professionals retained by the Debtor and the Committee in amounts as set forth in the Budget, provided, however, that notwithstanding anything herein to the contrary, no such cash collateral may be used to pay any professional fees or expenses of any party in interest, including without limitation, the Debtor or any Committee, to object to, contest in any manner or otherwise challenge, the validity, amount, perfection or enforceability of the Bank Lien Documents, the Bank Lien Indebtedness, the Bank Lien or any other liens, claims or security interests securing the Bank Lien Indebtedness, to contest, challenge, limit or modify the right of the Bank to credit bid its claim in this case, to attempt to prevent, hinder or otherwise delay the Bank from realization upon any Collateral other than to seek a determination as to whether an event of default has occurred hereunder, to undertake any formal discovery proceedings in anticipation of any of the foregoing, or to materially support any such efforts. Notwithstanding the foregoing, nothing contained herein shall in any way be construed as a cap on fees that may be incurred by the Debtor's or Committee's professionals during the case or to authorize payment of such fees without Court approval.

4.    The Debtor's inclusion of any amounts in the Budget neither constitutes an admission or acknowledgment of the Debtor's liability for such amounts nor shall be deemed to give rise to the Debtor's obligation to pay such amounts.

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

1      5.      Any and all proceeds of all Collateral received by the Debtor must be deposited in

2    the Debtor's DIP bank account(s) and will remain subject to the terms and conditions of this

3    Stipulation.

4      6.      As set forth in the Budget, and subject to actual receipt of income, Debtor shall

5    remit to the Bank funds in excess of projected uses on a weekly basis on or before the second

6    business day of the following week. On or before such date, the Debtor shall provide to the Bank

7    a true and accurate report of all income and expenditures for the foregoing week.

8      7.      In accordance with sections 361 and 363 of the Bankruptcy Code, as adequate

9    protection for the Debtor's use of property constituting the respective the Bank's cash collateral,

10    the Debtor hereby grants to the Bank replacement liens on and security interests in and to all

11    assets of the Debtor of any kind or nature, wherever located, now owned or hereafter acquired,

12    and the proceeds thereof that are or have been acquired, generated or received by the Debtor

13    subsequent to the Petition Date (including any causes of action for unauthorized transfers made

14    post-petition and proceeds thereof but excluding avoidance actions under Chapter 5 of the

15    Bankruptcy Code and any proceeds thereof), and all post-petition property to which the Bank's

16    respective pre-petition liens attached, which replacement liens and security interests shall be

17    deemed valid, perfected, continuing, unavoidable, enforceable and not subject to subordination,

18    impairment or avoidance to the same extent and with the same priority in which the Bank's pre-

19    petition liens existed as of the Petition Date pursuant to section 363 of the Bankruptcy Code (the

20    "Replacement Liens"), and the Bank shall be entitled to all of the rights and benefits of section

21    552(b) of the Bankruptcy Code, and subject to the entry of a final order in connection with this

22    Stipulation, the "equities of the case" exception shall not apply.

23      8.      The Replacement Liens shall be subject and subordinate to a Carve Out (the "Carve

24    Out"), which shall comprise the following: (i) all fees required to be paid to the Clerk of the

25    Bankruptcy Court and the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a) in

26    the Chapter 11 Case; (ii) all compensation and expenses of a trustee approved by the Court under

27    Bankruptcy Code section 726(b) up to and not to exceed $50,000.00 in aggregate; (iii) the

28    expenses of the patient care ombudsman appointed in this Chapter 11 case in an aggregate amount

not to exceed the lesser of the amount provided in the Budget or $30,000.00t; and (iv) the aggregate amount of the fees and expenses approved by the Bankruptcy Court pursuant to Bankruptcy Code sections 330 or 331 of Professionals (including any chapter 11 trustee's professionals) in an aggregate amount not to exceed the lesser of $250,000.00 or the amounts reflected in the DIP Budget. Without limiting the foregoing, the Carve-Out may only be used for the payment of fees and expenses of Professionals only to the extent allowed by order of the Bankruptcy Court in the Chapter 11 Case, and in the event of the occurrence of the Termination Date, the Carve-Out shall be reduced and limited to the lesser of post-petition fees and expenses accrued on or before the Termination Date plus $25,000.00.

9.     The Replacement Liens granted herein are hereby deemed perfected without the necessity for filing or executing documents which might otherwise be required under non-bankruptcy law for perfection of said security interests.

10.     In addition to the Replacement Liens granted hereunder, the Bank is hereby granted an administrative expense claim under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code in the Debtor's case, in the amount by which the adequate protection afforded above proves to be inadequate and any post-petition diminution in value of the Collateral, capped by the amount of the Bank's claim. This administrative claim shall be allowed and have superpriority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 of the Bankruptcy Code, except for the Carve-Out, and shall be payable from and have recourse to all pre- petition and post-petition property of the Debtor and all proceeds thereof, but excluding avoidance actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof.

11.     The Debtor shall be deemed to have forever waived, discharged, and released any and all rights against the Bank together with its agents, attorneys, financial advisors, consultants, officers, directors, and employees (all of the foregoing, collectively, the "Releasees"), to pursue, bring or prosecute any and all "claims" (as defined in the Bankruptcy Code), counterclaims, causes of action, defenses, setoff, recoupment, or other offset rights or rights of reduction against any and all of the Releasees, whether arising at law or in equity, with respect to the Bank Lien

Documents and/or Bank Lien, including (i) any recharacterization, subordination, avoidance, "lender liability" or other claim arising under or pursuant to section 105 or Chapter 5 of the Bankruptcy Code or otherwise, or under any other provision of applicable state or federal law, and (ii) any right or basis to challenge or object to the amount, validity, characterization or enforceability of the Bank Lien Indebtedness, the Bank Lien Documents and/or or the validity, characterization, enforceability, priority, or avoidability of the Bank Lien. Upon entry of this Stipulation, the Bank will not be required to file a proof of claim in the Chapter 11 case or successor case for any claim allowed herein. The Debtor's acknowledgement of the Bank Lien Indebtedness shall be deemed to constitute a timely filed proof of claim for the Bank.

12.    Unless the Bank has provided its prior written consent, or the entire Bank Lien Indebtedness has been paid in full, there shall not be entered in this proceeding, or in any successor case, any order which grants any security, mortgage, collateral interest or other lien, pursuant to section 364(d) of the Bankruptcy Code or otherwise, on any portion of the Collateral and/or claim that is entitled to any priority status, in each case which is superior to or *pari passu* with the Bank Lien, or the Replacement Liens and the other protection granted pursuant to this Stipulation to the Bank or the use of cash collateral for any purpose other than as provided for in this Stipulation.

13.    The estate's authority to use cash collateral hereunder is conditional upon: (a) Anka MHSA Holding Company, LLC granting a lien against each of its real properties and substantially all personal property, with each such lien to secure all of the Bank Lien Indebtedness, from wherever arising; (b) AP&H, Inc., granting a lien against each of its real properties (in addition to the liens already held by the Bank), with each such lien to secure all of the Bank Lien Indebtedness, from wherever arising; and (c) AP&H, Inc. and Anka MHSA Holding Company, LLC each entering into an agreement with the Bank governing the marketing and liquidation of their assets in form acceptable to the Bank, approval of which shall not be unreasonably withheld or delayed.

14.    The provisions of this Stipulation shall be binding upon, and inure to the benefit of, the Debtor and the Bank and their respective permitted successors and assigns, including, but not

limited to, any trustee or other fiduciary appointed as a legal representative of the Debtor whether under Chapter 11 of the Bankruptcy Code or in any subsequent Chapter 7 case, and the Debtor's estate and its creditors.

15. The entry of this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or impliedly, or otherwise impair, any of the rights, claims or privileges (whether legal, equitable or otherwise) of the Bank under the Bankruptcy Code or under non-bankruptcy law, including its right to seek relief from the automatic stay under section 362 of the Bankruptcy Code.

16. The automatic stay imposed by section 362 of the Bankruptcy Code shall be, and hereby is, modified to the extent necessary to implement and effectuate the terms and conditions of this Stipulation.

17. The Bank shall be entitled to the protection of section 364(e) of the Bankruptcy Code with respect to diminution of Collateral in the event that the Collateral decreases in value during the pendency of this Chapter 11 case or if any provision of this Stipulation or any authorization contained herein is vacated, reversed, stayed, or modified on appeal or otherwise.

18. Upon entry of this Stipulation, Debtor Stipulations shall be binding upon the Debtor and on all parties in interest, including any Committee, unless such Committee or any other party in interest other than the Debtor, including any Chapter 11 trustee appointed, (or if the Chapter 11 case is converted to a case under Chapter 7 prior to the expiration of the Challenge Period (as defined below), the Chapter 7 trustee in such successor case) obtains the authority to commence and commences an adversary proceeding, contested matter or other action or proceeding challenging, seeking to avoid or otherwise objecting to the Bank Lien Indebtedness or the Bank Lien, including, but not limited to, any cause of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state law (a "Challenge"), within ninety (90) calendar days from the date of entry of a final order approving this Stipulation, or with respect to a Chapter 7 trustee only and excluding all other parties in interest, upon the conversion of the Chapter 11 case to Chapter 7, to the extent that any period to investigate the facts and file a complaint or a motion seeking

Trodella & Lapping LLP
540 Pacific Avenue
San Francisco, CA 94133

1    authority to commence litigation as a representative of the estate has not expired, ninety (90) days

2    from the date a Chapter 7 trustee is appointed (whether on an interim or final basis) (the

3    "Challenge Period"). After expiration of the Challenge Period, any and all such Challenges and

4    objections by any party shall be deemed to be forever waived, barred and discharged and the

5    Debtor Stipulations shall be binding on all persons, entities, creditors, interest holders and parties

6    in interest in this case or any successor case. The Challenge Period may only be extended with the

7    written consent of the Bank in its sole discretion or by order of the Court, once, for cause shown.

8    Notwithstanding any provision to the contrary herein, nothing in this Stipulation shall be

9    construed to grant standing on or otherwise authorize any party in interest to bring any Challenge

10   or other claim on behalf of the Debtor's estate against either the Bank, and the Bank hereby

11   reserves all rights to challenge and object to such standing or authority.

12          19.     This Stipulation shall continue until modified or terminated by further order of this

13   Court.

14          20.     Except as explicitly provided for herein, this Stipulation does not create any rights

15   for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental

16   beneficiary.

17          21.     Except as otherwise provided in this Stipulation, the terms and conditions of the

18   Bank Lien Documents shall remain in full force and effect, and the Bank shall have all the rights

19   provided therein, subject to the provisions of the Bankruptcy Code and any orders of the Court.

20          22.     This Stipulation sets forth the entire agreement between the Parties with respect to

21   the matters stated herein and supersedes all prior discussions, negotiations and agreements, written

22   or oral, and may not be modified except by a writing signed by the Debtor and the Bank. This

23   Stipulation may not be amended, modified, or supplemented, nor any provision hereof waived,

24   except in writing signed by the Debtor and the Bank. For the avoidance of doubt, nothing

25   contained herein shall be construed an agreement, acknowledgment or consent by the Bank of any

26   kind or nature to extend or otherwise modify in any manner the Debtor's use of cash collateral, the

27   Budget or the Carve-Out, all of which shall be in the Bank's sole and absolute discretion.

28

23. Unless extended by a writing executed by the Parties or by further stipulation or order, the Debtor's right to use cash collateral terminates on the earlier of (a) July 31, 2019, (b) five (5) calendar days (extended to the next business day if the last day falls on a weekend or federal holiday) following the Debtor's receipt from the Bank of written notice that the Debtor is in default of this Stipulation, which default remains uncured three (3) calendar days (extended to the next business day if the last day falls on a weekend or federal holiday) following receipt of such notice (the "Cure Period"), provided that the Court later enters an order determining that the Debtor is in default if such default is contested by the Debtor in a motion or application filed with the Court, which motion or application shall be filed within the Cure Period and may be heard upon five (5) calendar days' notice to the Bank and any affected parties in interest or at the Court's convenience, (c) upon entry of an order of the Court finding that the Debtor is in default of this Stipulation, (d) the effective date of any plan confirmed in this case, (e) unless filed by the Debtor, in which case termination will occur upon the filing of the motion, the date of entry of an order dismissing this Chapter 11 case or converting this Chapter 11 case to a Chapter 7 case, or appointing a Chapter 11 trustee or examiner in the Chapter 11 case, (f) the date of entry of an order granting relief from the automatic stay to any party for any purpose in respect of any of the Collateral, or (g) the entry of an order reversing, revoking, modifying, amending, staying, or rescinding this Stipulation, (h) either AP&H, Inc., a California corporation, or Anka MHSA Holding Company, LLC becomes a debtor in a case under any chapter of the Bankruptcy Code (the "Termination Date"). On the Termination Date, the Bank's consent to use cash collateral shall be deemed withdrawn and the Debtor may not continue to use cash collateral except upon the Bank's written consent (which may be withheld for any reason, with or without cause) or further order of the Court. Except for the estate's authority to use cash collateral, all other terms and conditions of this Stipulation shall survive and shall continue in full force and effect notwithstanding.

24. Without limiting the foregoing, if the Debtor is in default of this Stipulation and the default is not cured within the Cure Period, then from and after the day following the Cure Period, the Bank shall be granted relief from the automatic stay provided in Bankruptcy Code section

362(a) to foreclose its liens and take possession of its Collateral effective at close of business on the third business day after the Bank's filing a notice of such uncured default and relief from stay with the Court and serving such notice upon the Debtor and all creditors and parties in interest of record; provided, however, that if the Debtor timely contests such default as provided above, then such relief from stay shall be effective upon entry of an order of the Court finding that the Debtor is in default of this Stipulation, without further notice or action. In such event, within a reasonable time of written request, the Debtor shall assemble the Bank's Collateral and make it available to the Bank, including by providing access to all books and records reasonably necessary to enable the Bank to enforce its security interests, including collecting accounts receivable or otherwise.

25. All of the Bank's rights under section 507(b) of the Bankruptcy Code, and all other rights under federal and state law that are not expressly modified hereby, are reserved.

26. For cause, including that the primary source of funding for the administration of the estate will be the Bank's cash collateral as provided herein, the Debtor's and the estate's ability to surcharge any of the Bank's Collateral under section 506(c) of the Bankruptcy Code or any similar federal or state law is hereby waived and released during the period that the debtor is authorized to use cash collateral.

27. This Court shall retain jurisdiction to implement, interpret and enforce the terms of this Stipulation.

28. If any or all of the provisions of this Stipulation are hereafter reversed, modified, vacated or stayed by subsequent order of this Court or any other Court, such reversal, stay, modification or vacatur shall not affect the validity and enforceability or any obligation, debt or claim incurred, or any priority, security interest or lien that is or was incurred or granted pursuant to this Order.

///

///

///

29.   Within five (5) calendar days after entry of an order approving this Stipulation on an interim or final basis, the Debtor shall add the Bank as an additional insured on each of the Debtor's insurance policies, unless already shown as an additional insured.

Dated: __May 7__, 2019

TRODELLA & LAPPING LLP
WENDEL, ROSEN, BLACK & DEAN LLP

By:   __/s/ Richard A. Lapping__
       Richard A. Lapping
       Attorneys for Debtor,
       ANKA Behavioral Health, Inc.

Dated: May 7, 2019

MACDONALD FERNANDEZ LLP

By:   _____
       Iain A. Macdonald
       Attorneys for Bank of Guam

**EXHIBIT A**

| | 4/5/2019 Actual | 4/12/2019 Actual | 4/19/2019 Actual | 4/26/2019 Actual | 4/30/2019 Actual | Total April |
|---|---|---|---|---|---|---|
| **Anka - April Cash Flow** | | | | | | |
| **CASH RECEIPTS** | | | | | | |
| **TOTAL CASH RECEIPTS** | $ 441,459 | $ 1,200,757 | $ 1,334,279 | $ 1,019,185 | $ 385,938 | $ 4,381,617 |
| | | | | | | |
| **OPERATING CASH DISBURSEMENTS** | | | | | | |
| | | | | | | |
| ***Salaries and Benefits*** | | | | | | |
| Payroll - Salaries and Payroll Expenses | | $ 1,011,842 | | $ 993,662 | | $ 2,005,504 |
| Payroll - Manual Checks | $ 11,375 | $ 15,362 | $ 8,010 | $ 33,831 | 33,696 | $ 102,274 |
| Payroll - 1099 Contractors | | $ 94,000 | | | | $ 94,000 |
| Pre-petition Expenses and Uncashed Checks | | | | | | |
| Employee's 401k contribution | | | | | | |
| Payroll Taxes | | $ 394,923 | | $ 381,724 | | $ 776,647 |
| Employee Health Insurance | $ 76,885 | $ 3,554 | $ 52,370 | $ 5,222 | $ 2,431 | $ 140,461 |
| 401(k) Audit | | | | | $ 32,275 | $ 32,275 |
| Workers' Compensation Insurance | | | | | | $ - |
| | | | | | | $ - |
| ***Total Salaries and Benefits*** | $ 88,260 | $ 1,519,681 | $ 60,380 | $ 1,414,439 | $ 68,402 | $ 3,151,161 |
| | | | | | | |
| ***Occupancy Costs*** | | | | | | |
| Utility | $ 1,164 | $ 1,482 | $ 5,505 | $ 6,492 | $ 7,193 | $ 21,836 |
| Building - Lease/Mortg/Rent | $ 10,429 | | $ 16,691 | $ 46,454 | $ 17,680 | $ 91,255 |
| Mortgage Interest | | | | | | $ - |
| Repairs & Maint | | | $ 2,923 | $ 41 | $ 985 | $ 3,950 |
| | | | | | | $ - |
| ***Total Occupancy Costs*** | $ 11,593 | $ 1,482 | $ 25,119 | $ 52,987 | $ 25,858 | $ 117,040 |
| | | | | | | |
| ***Client Transportation Costs*** | | | | | | |
| Vehicle Lease | | | $ 20,000 | | | $ 20,000 |
| Vehicle Expense | | $ 233 | $ 14,617 | | | $ 14,850 |
| Other Transportation Expenses - Client Related | | | | | | $ - |
| | | | | | | $ - |
| ***Total Client Transportation Costs*** | $ - | $ 233 | $ 34,617 | $ - | $ - | $ 34,850 |
| | | | | | | |
| ***Essential Client Services*** | | | | | | |
| Essential Client Services | $ 36,191 | $ 24,337 | $ 33,844 | $ 39,089 | $ - | $ 133,461 |
| Linen and Household Supplies | | | | | | $ - |
| Program Expenses | | | | | | $ - |
| Food Supplies | | | | | | $ - |
| Medication & Lab Costs | | | | | | $ - |
| Other Required Costs | | | | | | $ - |
| | | | | | | $ - |
| ***Total Client Services*** | $ 36,191 | $ 24,337 | $ 33,844 | $ 39,089 | $ - | $ 133,461 |
| | | | | | | |
| ***Purchased Services*** | | | | | | |
| Software -Data -Phone -Printers -IT Support - Equip Leases | $ 51,179 | $ 32,413 | $ 85,356 | $ 79,347 | $ - | $ 248,295 |
| MD Consultant Fees and Psychiatric Specialists, etc. | $ 7,727 | $ 35,972 | $ 46,519 | $ 3,230 | $ - | $ 93,447 |
| Outside Labor | | | | | | $ - |
| Other Purchased Services | | | | | | $ - |
| | | | | | | $ - |
| ***Total Purchased Services*** | $ 58,905 | $ 68,385 | $ 131,875 | $ 82,577 | $ - | $ 341,742 |

Case: 19-41025   Doc# 38   Filed: 05/07/19   Entered: 05/07/19 16:34:44   Page 28 of 35

| | Anka - April Cash Flow | | | | | | |
|---|---|---|---|---|---|---|---|
| | 4/5/2019 Actual | 4/12/2019 Actual | 4/19/2019 Actual | 4/26/2019 Actual | 4/30/2019 Actual | Total April | |
| ***Administrative Expenses*** | | | | | | | |
| Postage/Shipping | | | | | $ 259 | $ 259 | |
| Office Supplies | | | | | | $ - | |
| Insurance - General & Auto | | $ 1,500 | $ 50,011 | | | $ 51,511 | |
| Bank Fees | | $ 5,168 | $ 57 | | | $ 5,225 | |
| Travel and Other Administrative Expenses | | | | | $ 11,700 | $ 11,700 | |
| ***Total Administrative Costs*** | $ - | $ 6,668 | $ 50,069 | $ - | $ 11,959 | $ 68,696 | |
| | | | | | | | |
| **TOTAL OPERATING CASH DISBURSEMENTS** | $ 194,949 | $ 1,620,786 | $ 335,903 | $ 1,589,091 | $ 106,219 | $ 3,846,949 | |
| | | | | | | | |
| **NON-OPERATING CASH DISBURSEMENTS** | | | | | | | |
| | | | | | | | |
| ***Professional Retainers & Fees*** | | | | | | | |
| BPM LLP | | | | $ 48,288 | $ 15,000 | $ 63,288 | |
| Trodella & Lapping | | | | $ 25,000 | $ 25,000 | $ 50,000 | |
| Wendel Rosen | | | | | $ 150,000 | $ 150,000 | |
| Donlin Recano | | | | | $ 15,000 | $ 15,000 | |
| Healthcare Ombudsman | | | | | $ - | $ - | |
| Carve-Out for Records Maintenance | | | | | $ - | $ - | |
| US Trustee Fees | | | | | $ 1,717 | $ 1,717 | |
| Carve-Out for Ch 7 Trustee and Committee | | | | | | $ - | |
| Carve-Out for Professional Fees | | | | | | $ - | |
| | | | | | | | |
| **TOTAL NON-OPERATING CASH DISBURSEMENTS** | $ - | $ - | $ - | $ 73,288 | $ 206,717 | $ 280,005 | |
| | | | | | | | |
| **Cash Payments to Bank of Guam** | | | | | | $ - | |
| | | | | | | | |
| **TOTAL CASH DISBURSEMENTS** | $ 194,949 | $ 1,620,786 | $ 335,903 | $ 1,662,379 | $ 312,936 | $ 4,126,953 | |
| | | | | | | | |
| **NET CASH FLOW** | $ 246,509 | $ ( 420,029 ) | $ 998,375 | $ ( 643,194 ) | $ 73,002 | $ 254,664 | |
| Cumulative Net Cash Flow | | | | | | | |
| | | | | | | | |
| **Cash Balance (Book) - All Accounts** | | | | | | | |
| Beginning Balance | | | | | | | |
| Net Cash Flow | | | | | | | |
| Ending Balance | | | | | | | |
| | | | | | | | |
| **Accounts Receivable** | | | | | | | |
| Beginning A/R | | | | | | | |
| Add: Invoices | | | | | | | |
| Deduct: Receipts | | | | | | | |
| Ending A/R | | | | | | | |

Case: 19-41025    Doc# 38    Filed: 05/07/19    Entered: 05/07/19 16:34:44    Page 29 of 35

|  | Anka - May Cash Flow | | | | | |
|---|---|---|---|---|---|---|
|  | 5/3/2019 Forecast | 5/10/2019 Forecast | 5/17/2019 Forecast | 5/24/2019 Forecast | 5/31/2019 Forecast | **Total May** |
| **CASH RECEIPTS** | | | | | | |
| **TOTAL CASH RECEIPTS** | $ 204,623 | $ 1,107,397 | $ 1,293,185 | $ 942,153 | $ 477,004 | **$ 4,024,362** |
| | | | | | | |
| **OPERATING CASH DISBURSEMENTS** | | | | | | |
| | | | | | | |
| ***Salaries and Benefits*** | | | | | | |
| Payroll - Salaries and Payroll Expenses | | | $ 1,024,308 | | $ 800,000 | $ 1,824,308 |
| Payroll - Manual Checks | | | | | | |
| Payroll - 1099 Contractors | | | | $ - | $ 95,000 | $ - |
| Pre-petition Expenses and Uncashed Checks | | | $ 158,165 | | | |
| Employee's 401k contribution | | | $ 49,429 | $ 49,000 | | |
| Payroll Taxes | | | $ 381,370 | | $ 296,000 | $ 677,370 |
| Employee Health Insurance | | | | | $ 270,000 | $ 270,000 |
| 401(k) Audit | | | | | | $ - |
| Workers' Compensation Insurance | | | | | $ 115,000 | $ 115,000 |
| | | | | | | |
| ***Total Salaries and Benefits*** | $ - | $ - | $ 1,613,272 | $ 49,000 | $ 1,576,000 | **$ 3,238,272** |
| ***Occupancy Costs*** | | | | | | |
| Utility | | | | | $ 60,000 | $ 60,000 |
| Building - Lease/Mortg/Rent | | | | | $ 365,000 | $ 365,000 |
| Mortgage Interest | | | | | $ 25,000 | $ 25,000 |
| Repairs & Maint | | $ 7,500 | $ 7,500 | $ 5,000 | $ 5,000 | $ 25,000 |
| | | | | | | |
| ***Total Occupancy Costs*** | $ - | $ 7,500 | $ 7,500 | $ 5,000 | $ 455,000 | **$ 475,000** |
| ***Client Transportation Costs*** | | | | | | |
| Vehicle Lease | | | | | $ 45,000 | $ 45,000 |
| Vehicle Expense | $ - | $ - | $ 7,500 | $ 7,500 | $ 7,500 | $ 22,500 |
| Other Transportation Expenses - Client Related | $ - | $ - | $ 750 | $ 750 | $ 750 | $ 2,250 |
| | | | | | | |
| ***Total Client Transportation Costs*** | $ - | $ - | $ 8,250 | $ 8,250 | $ 53,250 | **$ 69,750** |
| ***Essential Client Services*** | | | | | | |
| Essential Client Services | $ 5,000 | $ - | | | | $ 5,000 |
| Linen and Household Supplies | | $ 4,000 | $ 4,000 | $ 3,000 | $ 3,000 | $ 14,000 |
| Program Expenses | | $ 4,000 | $ 4,000 | $ 3,000 | $ 3,000 | $ 14,000 |
| Food Supplies | | $ 16,000 | $ 16,000 | $ 12,000 | $ 12,000 | $ 56,000 |
| Medication & Lab Costs | | $ 2,000 | $ 2,000 | $ 1,500 | $ 1,500 | $ 7,000 |
| Other Required Costs | | $ 9,000 | $ 9,000 | $ 1,750 | $ 1,750 | $ 21,500 |
| | | | | | | |
| ***Total Client Services*** | $ 5,000 | $ 35,000 | $ 35,000 | $ 21,250 | $ 21,250 | **$ 117,500** |
| ***Purchased Services*** | | | | | | |
| Software -Data -Phone -Printers -IT Support - Equip Leases | | | | | $ 210,000 | $ 210,000 |
| MD Consultant Fees and Psychiatric Specialists, etc. | | | | | $ 38,000 | $ 38,000 |
| Outside Labor | | | | $ 3,500 | $ 3,500 | $ 7,000 |
| Other Purchased Services | | | | | | $ - |
| | | | | | | |
| ***Total Purchased Services*** | $ - | $ - | $ - | $ 3,500 | $ 251,500 | **$ 255,000** |

Case: 19-41025    Doc# 38    Filed: 05/07/19    Entered: 05/07/19 16:34:44    Page 30 of 35

| | Anka - May Cash Flow | | | | | |
|---|---|---|---|---|---|---|
| | 5/3/2019 | 5/10/2019 | 5/17/2019 | 5/24/2019 | 5/31/2019 | Total |
| | Forecast | Forecast | Forecast | Forecast | Forecast | May |
| ***Administrative Expenses*** | | | | | | |
| Postage/Shipping | | | $ 2,500 | $ 1,500 | $ 1,500 | $ 5,500 |
| Office Supplies | | | | | $ 500 | $ 500 |
| Insurance - General & Auto | | | | | $ 50,000 | $ 50,000 |
| Bank Fees | | | $ 7,500 | | | $ 7,500 |
| Travel and Other Administrative Expenses | | | | | $ 2,500 | |
| ***Total Administrative Costs*** | $ - | $ - | $ 10,000 | $ 1,500 | $ 54,500 | $ 66,000 |
| | | | | | | |
| **TOTAL OPERATING CASH DISBURSEMENTS** | $ 5,000 | $ 42,500 | $ 1,674,022 | $ 88,500 | $ 2,411,500 | $ 4,221,522 |
| | | | | | | |
| **NON-OPERATING CASH DISBURSEMENTS** | | | | | | |
| | | | | | | |
| ***Professional Retainers & Fees*** | | | | | | $ - |
| BPM LLP | | | | | | $ - |
| Trodella & Lapping | | | | | | $ - |
| Wendel Rosen | | | | | | $ - |
| Donlin Recano | | $ 20,000 | | | | $ 20,000 |
| Healthcare Ombudsman | | | $ 15,000 | | | $ 15,000 |
| Carve-Out for Records Maintenance | | | | | | $ - |
| US Trustee Fees | | | | | | $ - |
| Carve-Out for Ch 7 Trustee and Committee | $ - | $ - | $ - | $ - | $ - | $ - |
| Carve-Out for Professional Fees | $ - | $ 75,000 | $ 75,000 | $ 75,000 | $ 75,000 | $ 300,000 |
| | | | | | | |
| **TOTAL NON-OPERATING CASH DISBURSEMENTS** | $ - | $ 95,000 | $ 90,000 | $ 75,000 | $ 75,000 | $ 335,000 |
| | | | | | | |
| **Cash Payments to Bank of Guam** | $ - | $ - | $ - | $ - | $ - | $ - |
| | | | | | | |
| **TOTAL CASH DISBURSEMENTS** | $ 5,000 | $ 137,500 | $ 1,764,022 | $ 163,500 | $ 2,486,500 | $ 4,556,522 |
| | | | | | | |
| **NET CASH FLOW** | $ 199,623 | $ 969,897 | $ ( 470,837 ) | $ 778,653 | $ ( 2,009,496 ) | $ ( 532,160 ) |
| Cumulative Net Cash Flow | $ 199,623 | $ 1,169,520 | $ 698,683 | $ 1,477,336 | $ ( 532,160 ) | |
| | | | | | | |
| Cash Balance (Book) - All Accounts | | | | | | |
| Beginning Balance | $ 585,171 | $ 784,794 | $ 1,754,691 | $ 1,283,854 | $ 2,062,507 | |
| Net Cash Flow | $ 199,623 | $ 969,897 | $ ( 470,837 ) | $ 778,653 | $ ( 2,009,496 ) | |
| Ending Balance | $ 784,794 | $ 1,754,691 | $ 1,283,854 | $ 2,062,507 | $ 53,011 | |
| | | | | | | |
| Accounts Receivable | | | | | | |
| Beginning A/R | | | | | | |
| Add: Invoices | | | | | | |
| Deduct: Receipts | | | | | | |
| Ending A/R | | | | | | |

Case: 19-41025   Doc# 38   Filed: 05/07/19   Entered: 05/07/19 16:34:44   Page 31 of 35

## Anka - June Cash Flow

| | 6/7/2019 Forecast | 6/14/2019 Forecast | 6/21/2019 Forecast | 6/28/2019 Forecast | Total June |
|---|---|---|---|---|---|
| **CASH RECEIPTS** | | | | | |
| **TOTAL CASH RECEIPTS** | $ 450,000 | $ 450,000 | $ 1,300,000 | $ 500,000 | $ 2,700,000 |
| | | | | | |
| **OPERATING CASH DISBURSEMENTS** | | | | | $ 3,500,000 |
| | | | | | |
| ***Salaries and Benefits*** | | | | | |
| Payroll - Salaries and Payroll Expenses | | $ 500,000 | | $ 300,000 | $ 800,000 |
| Payroll - Manual Checks | | | | | |
| Payroll - 1099 Contractors | $ 95,000 | | | $ 50,000 | $ 145,000 |
| Pre-petition Expenses and Uncashed Checks | | | | | |
| Employee's 401k contribution | | | | | |
| Payroll Taxes | | $ 200,000 | | $ 120,000 | $ 320,000 |
| Employee Health Insurance | $ - | | | $ 135,000 | $ 135,000 |
| 401(k) Audit | | | | | $ - |
| Workers' Compensation Insurance | $ - | | | $ 115,000 | $ 115,000 |
| | | | | | |
| ***Total Salaries and Benefits*** | $ 95,000 | $ 700,000 | $ - | $ 720,000 | $ 1,515,000 |
| | | | | | |
| ***Occupancy Costs*** | | | | | |
| Utility | | | | $ 30,000 | $ 30,000 |
| Building - Lease/Mortg/Rent | $ - | | | $ 150,000 | $ 150,000 |
| Mortgage Interest | | | | $ 25,000 | $ 25,000 |
| Repairs & Maint | $ 3,500 | $ 3,500 | | $ 15,000 | $ 22,000 |
| | | | | | |
| ***Total Occupancy Costs*** | $ 3,500 | $ 3,500 | $ - | $ 220,000 | $ 227,000 |
| | | | | | |
| ***Client Transportation Costs*** | | | | | |
| Vehicle Lease | | | | $ 30,000 | $ 30,000 |
| Vehicle Expense | $ 3,500 | $ 3,500 | | | $ 7,000 |
| Other Transportation Expenses - Client Related | $ 750 | $ 750 | | $ 25,000 | $ 26,500 |
| | | | | | |
| ***Total Client Transportation Costs*** | $ 4,250 | $ 4,250 | $ - | $ 55,000 | $ 63,500 |
| | | | | | |
| ***Essential Client Services*** | | | | | |
| Essential Client Services | | | | | $ - |
| Linen and Household Supplies | $ 2,000 | $ 1,000 | | | $ 3,000 |
| Program Expenses | $ 2,000 | $ 1,000 | | | $ 3,000 |
| Food Supplies | $ 8,000 | $ 4,000 | | | $ 12,000 |
| Medication & Lab Costs | $ 1,000 | $ 500 | | | $ 1,500 |
| Other Required Costs | $ 4,500 | $ 2,250 | | | $ 6,750 |
| | | | | | |
| ***Total Client Services*** | $ 17,500 | $ 8,750 | $ - | $ - | $ 26,250 |
| | | | | | |
| ***Purchased Services*** | | | | | |
| Software -Data -Phone -Printers -IT Support - Equip Leases | | | | $ 75,000 | $ 75,000 |
| MD Consultant Fees and Psychiatric Specialists, etc. | $ 3,500 | $ 3,500 | | | $ 7,000 |
| Outside Labor | $ 3,500 | $ 3,500 | $ 3,500 | $ 3,500 | $ 14,000 |
| Other Purchased Services | | | | | $ - |
| | | | | | |
| ***Total Purchased Services*** | $ 7,000 | $ 7,000 | $ 3,500 | $ 78,500 | $ 96,000 |

CONVERT TO CHAPTER 7 )

Case: 19-41025    Doc# 38    Filed: 05/07/19    Entered: 05/07/19 16:34:44    Page 32 of 35

| | Anka - June Cash Flow | | | | |
|---|---|---|---|---|---|
| | 6/7/2019 | 6/14/2019 | 6/21/2019 | 6/28/2019 | Total |
| | Forecast | Forecast | Forecast | Forecast | June |
| *Administrative Expenses* | | | | | |
| Postage/Shipping | $ 750 | $ 750 | | $ 2,500 | $ 4,000 |
| Office Supplies | | | | | $ - |
| Insurance - General & Auto | | | | $ 50,000 | $ 50,000 |
| Bank Fees | | $ 7,500 | | | $ 7,500 |
| Travel and Other Administrative Expenses | $ 3,500 | | | | |
| *Total Administrative Costs* | $ 4,250 | $ 8,250 | $ - | $ 52,500 | $ 65,000 |
| | | | | | |
| **TOTAL OPERATING CASH DISBURSEMENTS** | $ 131,500 | $ 731,750 | $ 3,500 | $ 1,126,000 | $ 1,992,750 |
| | | | | | |
| **NON-OPERATING CASH DISBURSEMENTS** | | | | | |
| | | | | | |
| *Professional Retainers & Fees* | | | | | |
| BPM LLP | | | | | $ - |
| Trodella & Lapping | | | | | $ - |
| Wendel Rosen | | | | | $ - |
| Donlin Recano | $ 15,000 | | | | $ 15,000 |
| Healthcare Ombudsman | | $ 15,000 | | $ 15,000 | $ 30,000 |
| Carve-Out for Records Maintenance | | | | $ - | $ - |
| US Trustee Fees | | | | | $ - |
| Carve-Out for Ch 7 Trustee and Committee | $ - | $ - | $ - | $ - | $ - |
| Carve-Out for Professional Fees | $ - | $ - | $ - | $ - | $ - |
| | | | | | |
| **TOTAL NON-OPERATING CASH DISBURSEMENTS** | $ 15,000 | $ 15,000 | $ - | $ 15,000 | $ 45,000 |
| | | | | | |
| Cash Payments to Bank of Guam | $ - | $ - | $ - | $ - | $ - |
| | | | | | |
| **TOTAL CASH DISBURSEMENTS** | $ 146,500 | $ 746,750 | $ 3,500 | $ 1,141,000 | $ 2,037,750 |
| | | | | | |
| **NET CASH FLOW** | $ 303,500 | $ ( 296,750 ) | $ 1,296,500 | $ ( 641,000 ) | $ 662,250 |
| Cumulative Net Cash Flow | $ ( 228,660 ) | $ ( 525,410 ) | $ 771,090 | $ 130,090 | |
| | | | | | |
| Cash Balance (Book) - All Accounts | | | | | |
| Beginning Balance | $ 53,011 | $ 356,511 | $ 59,761 | $ 1,356,261 | |
| Net Cash Flow | $ 303,500 | $ ( 296,750 ) | $ 1,296,500 | $ ( 641,000 ) | |
| Ending Balance | $ 356,511 | $ 59,761 | $ 1,356,261 | $ 715,261 | |
| | | | | | |
| Accounts Receivable | | | | | |
| Beginning A/R | | | | | |
| Add: Invoices | | | | | |
| Deduct: Receipts | | | | | |
| Ending A/R | | | | | |

5/7/2019

**DRAFT --- Anka - 13-week Cash Flow - v.05.07.19.xls**

Page 6 of 8

Case: 19-41025    Doc# 38    Filed: 05/07/19    Entered: 05/07/19 16:34:44    Page 33 of 35

| | | Anka - July Cash Flow | | | | | Anka 13 Weeks |
|---|---|---|---|---|---|---|---|
| | 7/7/2019 | 7/14/2019 | 7/21/2019 | 7/28/2019 | Total July | | Total 13 Weeks |
| | Forecast | Forecast | Forecast | Forecast | | | |
| **CASH RECEIPTS** | | | | | | | |
| **TOTAL CASH RECEIPTS** | $ 250,000 | $ 750,000 | $ 750,000 | $ 750,000 | $ 1,000,000 | $ | 7,724,362 |
| | | | | | | | |
| **OPERATING CASH DISBURSEMENTS** | | | | | | | |
| | | | | | | | |
| ***Salaries and Benefits*** | | | | | | | |
| Payroll - Salaries and Payroll Expenses | | $ - | | $ - | $ - | $ | 2,624,308 |
| Payroll - Manual Checks | | | | | | $ | - |
| Payroll - 1099 Contractors | | $ - | | $ - | $ - | $ | 145,000 |
| Pre-petition Expenses and Uncashed Checks | | | | | | | |
| Employee's 401k contribution | | | | | | | |
| Payroll Taxes | | $ - | | $ - | $ - | $ | 997,370 |
| Employee Health Insurance | $ - | | | | $ - | $ | 405,000 |
| 401(k) Audit | | | | | $ - | $ | - |
| Workers' Compensation Insurance | $ - | | | | $ - | $ | 230,000 |
| | | | | | | | |
| ***Total Salaries and Benefits*** | $ - | $ - | $ - | $ - | $ - | $ | 4,753,272 |
| | | | | | | | |
| ***Occupancy Costs*** | | | | | | | |
| Utility | | | | $ - | $ - | $ | 90,000 |
| Building - Lease/Mortg/Rent | | | | $ - | $ - | $ | 515,000 |
| Mortgage Interest | | | | $ - | $ - | $ | 50,000 |
| Repairs & Maint | | | | $ - | $ - | $ | 47,000 |
| | | | | | | | |
| ***Total Occupancy Costs*** | $ - | $ - | $ - | $ - | $ - | $ | 702,000 |
| | | | | | | | |
| ***Client Transportation Costs*** | | | | | | | |
| Vehicle Lease | | | | | $ - | $ | 75,000 |
| Vehicle Expense | | | | | $ - | $ | 29,500 |
| Other Transportation Expenses - Client Related | | | | $ - | $ - | $ | 28,750 |
| | | | | | | | |
| ***Total Client Transportation Costs*** | $ - | $ - | $ - | $ - | $ - | $ | 133,250 |
| | | | | | | | |
| ***Essential Client Services*** | | | | | | | |
| Essential Client Services | $ - | $ - | | | $ - | $ | 5,000 |
| Linen and Household Supplies | | | | | $ - | $ | 17,000 |
| Program Expenses | | | | | $ - | $ | 17,000 |
| Food Supplies | | | | | $ - | $ | 68,000 |
| Medication & Lab Costs | | | | | $ - | $ | 8,500 |
| Other Required Costs | | | | | $ - | $ | 28,250 |
| | | | | | | | |
| ***Total Client Services*** | $ - | $ - | $ - | $ - | $ - | $ | 143,750 |
| | | | | | | | |
| ***Purchased Services*** | | | | | | | |
| Software -Data -Phone -Printers -IT Support - Equip Leases | | $ - | | | $ - | $ | 285,000 |
| MD Consultant Fees and Psychiatric Specialists, etc. | | | | | $ - | $ | 45,000 |
| Outside Labor | | | | | $ - | $ | 21,000 |
| Other Purchased Services | | | | | $ - | $ | - |
| | | | | | | | |
| ***Total Purchased Services*** | $ - | $ - | $ - | $ - | $ - | $ | 351,000 |

Case: 19-41025   Doc# 38   Filed: 05/07/19   Entered: 05/07/19 16:34:44   Page 34 of 35

| | Anka - July Cash Flow | | | | | Anka 13 Weeks |
|---|---|---|---|---|---|---|
| | 7/7/2019 Forecast | 7/14/2019 Forecast | 7/21/2019 Forecast | 7/28/2019 Forecast | **Total July** | **Total 13 Weeks** |
| ***Administrative Expenses*** | | | | | | |
| Postage/Shipping | | | | $ - | $ - | $ 9,500 |
| Office Supplies | | | | | $ - | $ 500 |
| Insurance - General & Auto | | $ - | | | $ - | $ 100,000 |
| Bank Fees | | $ - | | | $ - | $ 15,000 |
| Travel and Other Administrative Expenses | | | | | | |
| ***Total Administrative Costs*** | $ - | $ - | $ - | $ - | $ - | $ 131,000 |
| | | | | | | |
| **TOTAL OPERATING CASH DISBURSEMENTS** | $ - | $ - | $ - | $ - | $ - | $ 6,214,272 |
| | | | | | | |
| **NON-OPERATING CASH DISBURSEMENTS** | | | | | | |
| | | | | | | |
| ***Professional Retainers & Fees*** | | | | | $ - | $ - |
| BPM LLP | | | | | $ - | $ - |
| Trodella & Lapping | | | | | $ - | $ - |
| Wendel Rosen | | | | | $ - | $ - |
| Donlin Recano | | | | $ - | $ - | $ 35,000 |
| Healthcare Ombudsman | | | | $ - | $ - | $ 45,000 |
| Carve-Out for Records Maintenance | $ 50,000 | | | | $ 50,000 | $ 50,000 |
| US Trustee Fees | | $ - | | | $ - | $ - |
| Carve-Out for Ch 7 Trustee and Committee | $ 150,000 | $ - | $ - | $ - | $ 150,000 | $ 150,000 |
| Carve-Out for Professional Fees | $ - | $ - | $ - | $ - | $ - | $ 300,000 |
| | | | | | | |
| **TOTAL NON-OPERATING CASH DISBURSEMENTS** | $ 200,000 | $ - | $ - | $ - | $ 200,000 | $ 580,000 |
| | | | | | | |
| **Cash Payments to Bank of Guam** | $ 750,000 | $ 750,000 | $ 750,000 | $ 750,000 | $ 3,000,000 | $ 3,000,000 |
| | | | | | | |
| **TOTAL CASH DISBURSEMENTS** | $ 950,000 | $ 750,000 | $ 750,000 | $ 750,000 | $ 3,200,000 | $ 9,794,272 |
| | | | | | | |
| **NET CASH FLOW** | $ ( 700,000 ) | $ - | $ - | $ - | $ ( 700,000 ) | $ ( 569,910 ) |
| Cumulative Net Cash Flow | $ ( 569,910 ) | $ ( 569,910 ) | $ ( 569,910 ) | $ ( 569,910 ) | | |
| | | | | | | |
| **Cash Balance (Book) - All Accounts** | | | | | | |
| Beginning Balance | $ 715,261 | $ 15,261 | $ 15,261 | $ 15,261 | | |
| Net Cash Flow | $ ( 700,000 ) | $ - | $ - | $ - | | |
| Ending Balance | $ 15,261 | $ 15,261 | $ 15,261 | $ 15,261 | | |
| | | | | | | |
| **Accounts Receivable** | | | | | | |
| Beginning A/R | | | | | | |
| Add:  Invoices | | | | | | |
| Deduct: Receipts | | | | | | |
| Ending A/R | | | | | | |

Case: 19-41025   Doc# 38   Filed: 05/07/19   Entered: 05/07/19 16:34:44   Page 35 of 35