MICHAEL A. SWEET (SBN 184345)
**FOX ROTHSCHILD LLP**
345 California Street, Suite 2200
San Francisco, CA 94104
Telephone:      (415) 364-5540
Facsimile:      (415) 391-4436
Email: msweet@foxrothschild.com

Attorneys for the
Official Committee of Unsecured Creditors

Richard A. Lapping (SBN: 107496)
**TRODELLA & LAPPING LLP**
540 Pacific Avenue
San Francisco, CA 94133
Telephone:      (415) 399-1015
Facsimile:      (415) 651-9004
Email: Rich@TrodellaLapping.com

Tracy Green (SBN: 114876)
**WENDEL, ROSEN, BLACK & DEAN LLP**
1111 Broadway, Suite 2400
Oakland, CA 94607-4028
Telephone:      (510) 834-6600
Facsimile:      (510) 834-1928
Email: tgreen@wendel.com

Attorneys for Debtor

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>     ANKA BEHAVIORAL HEALTH,<br>     INCORPORATED,<br><br>          Debtor. | Case No. 19-41025-WJL<br><br>Chapter 11<br><br>**PLAN OF LIQUIDATION FOR DEBTOR JOINTLY PROPOSED BY DEBTOR AND COMMITTEE DATED JULY 25, 2019**<br><br>Hon. William J. Lafferty, III |

1

## INTRODUCTION

ANKA Behavioral Health, Inc. (the **"Debtor"**), debtor in possession in the above-captioned chapter 11 case, and the Official Committee of Unsecured Creditors (the **"Committee"**) jointly propose the following plan of liquidation for the Debtor pursuant to the provisions of chapter 11 of the Bankruptcy Code. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business and operations, risk factors and other related matters. The Disclosure Statement also provides a summary of this Plan.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

As used herein, capitalized terms have the meanings set forth below. Any term that is not otherwise defined herein, but that is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

### 1.1  Definitions

**"90 Day Challenge Period"** means the 90-day period from June 14, 2019, to September 12, 2019, during which the Committee may challenge, seek to avoid or otherwise object to the Bank Claim as set forth in the Cash Collateral Orders.

**"Administrative Claim"** means a Claim for a cost or expense of administration of the Chapter 11 Case allowable under sections 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority pursuant to section 507(a) of the Bankruptcy Code, including: (i) any actual and necessary cost and expense, incurred by the Debtor after the Petition Date, of preserving the Estate and operating the Debtor's business, including wages, salaries or commissions for services rendered after the commencement of the Case; (ii) Professional Fee Claims; and (iii) all fees and charges properly assessed against the Estate pursuant to 28 U.S.C. § 1930.

**"Administrative Claims Bar Date"** means October 31, 2019, the date by which all unpaid Administrative Claims arising prior to the Effective Date shall be filed with the Bankruptcy Court or be forever barred.

**"Allowed Claim"** means a Claim: (a) scheduled by the Debtor as undisputed, not contingent and liquidated; (b) as to which no objection or request for estimation has been filed on or before the

2

Claims Objection Deadline or the expiration of such other applicable period fixed by the Bankruptcy Court; (c) as to which any objection has been settled, waived, withdrawn or denied by a Final Order; or (d) that is Allowed (i) by a Final Order, (ii) by an agreement between the Holder of such Claim and the Debtor, or (iii) pursuant to this Plan. For the purpose of computing distributions under this Plan, Allowed Claims shall not include penalties, punitive damages or interest with respect to such Claim accruing from and after the Petition Date, except as provided in section 506(b) of the Bankruptcy Code, or as otherwise expressly set forth in this Plan.

**"Assets"** means all of the assets, property, interests, and effects, Cash, receivables, real and personal, tangible and intangible, wherever situated, of Debtor, as they existed on the Effective Date or thereafter, including all of the Debtor's other non-Cash property and assets, including all of the Litigation Claims.

**"Avoidance Actions"** means all claims, rights, and causes of action of Debtor's Estate under the Bankruptcy Code, including but not limited to those set forth in sections 506(c), 506(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or their state law analogs, regardless of whether or not such actions have been commenced prior to the Effective Date.

**"Bank"** means the Bank of Guam.

**"Bank Claim"** means all Claims of the Bank under the Bank Lien Documents.

**"Bank Collateral"** means all Assets securing the Bank Claim under the Bank Lien Documents.

**"Bank Lien Documents"** has the meaning ascribed to it in the Cash Collateral Orders.

**"Bankruptcy Code"** means title 11, United States Code, as now in effect or hereafter amended.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Northern District of California, which has jurisdiction over the Chapter 11 Case pursuant to section 1334 of title 28 of the United States Code and the reference from the United States District Court for the Northern District of California pursuant to its General Order No. 24 as amended February 22, 2016.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Bankruptcy Local Rules of the Bankruptcy Court, as now in effect or hereafter amended.

3

**"Cash"** means legal tender of the United States of America and equivalents thereof.

**"Cash Collateral Orders"** means the *Interim Order Granting Debtor's Motion for Approval of Stipulation for Interim and Final Order (I) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Bankruptcy Rule 4001 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363 and Setting Final Hearing Thereon* [entered May 16, 2019, at Docket No. 58], and the *Order After Final Hearing Approving Amended Stipulation (I) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Bankruptcy Rule 4001 and (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363* [entered July 14, 2019, at Docket No. 165].

**"Chapter 11 Case"** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court and assigned Case No. 19-41025.

**"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

**"Claims Objection Deadline"** means the last day for Filing objections to Claims established by Bankruptcy Local Rule 3003-1.

**"Class"** means a category of Holders of Claims as described in Article II of this Plan.

**"Committee"** means the Official Committee of Unsecured Creditors, appointed by the Office of the United States Trustee in the Bankruptcy Case, as its membership may be revised from time to time under applicable bankruptcy procedures.

**"Confirmation Date"** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

"**Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

**"Debtor"** has the meaning assigned to it in the Introduction.

**"Disbursing Agent"** means the Person or Entity that may be designated in the Liquidation Trust Agreement and/or Confirmation Order to make distributions under this Plan.

4

"**Disclosure Statement**" means that certain document as defined in section 1125(b) of the Bankruptcy Code relating to this Plan, including all exhibits and schedules thereto, as will be filed separately and as thereafter amended or supplemented from time to time, and as approved by order of the Bankruptcy Court.

"**Disputed Claim**" means any Claim (a) as to which the Debtor or Liquidation Trustee has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, (b) scheduled as disputed, unliquidated or contingent, or not scheduled, (c) subject to setoff, recoupment or any avoidance action arising under sections 544-550 of the Bankruptcy Code, or (d) otherwise disputed by the Debtor in accordance with applicable law, which objection has not been withdrawn or determined by a Final Order.

"**Distribution Date**" means any date, after the Effective Date, upon which the initial and all subsequent distributions will be made to or on account of the Holders of Allowed Claims pursuant to the provisions of this Plan.

"**Effective Date**" means the first date on which all of the conditions precedent described in Section 5.1 of this Plan have occurred or have been waived in accordance with Section 5.1 of this Plan.

"**Estate**" means the Debtor's estate created under section 541 of the Bankruptcy Code.

"**File, Filed or Filing**" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

"**Final Order**" means an order of the Bankruptcy Court as to which the time to appeal, petition for certiorari or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue or rehear shall have been waived in writing in form and substance satisfactory to the Plan Proponents or, in the event that an appeal, writ of certiorari or reargument or rehearing thereof has been sought, such appeal, writ of certiorari or reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari or motion for reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any

5

analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not preclude such order from being a Final Order.

**"General Unsecured Claim"** means a Claim that is not an Administrative Claim, a Priority Tax Claim, a Non-Tax Priority Claim, or a Secured Claim. A Claim arising from the rejection of an executory contract or unexpired lease, and Claims allowable under section 502(h) of the Bankruptcy Code shall be General Unsecured Claims.

**"Holder"** means, when used in reference to a Claim, an Entity, Person or Governmental Unit that owns such Claim.

**"Impaired"** means, when used in reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**"Interest"** means the legal, equitable, contractual and other rights of the Holders of any shareholder interests in the Debtor. There are no Interests or Holders of Interests because Debtor is a California domestic nonprofit corporation.

**"Lien"** shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

**"Liquidation Proceeds"** means all available Cash on hand as of the Effective Date in addition to Cash to be received from the resolution of Litigation Claims and the sale or disposition of the Assets and all of the Debtor's remaining Assets including all interests therein, Net of expenses (including professional fees and expenses) of such resolution and disposition.

**"Liquidation Trust"** means a liquidating trust that will be established for the benefit of Holders of Allowed Claims pursuant to the Plan and in accordance with the terms of the Liquidation Trust Agreement.

**"Liquidation Trust Agreement"** means the Liquidation Trust Agreement that will establish the Liquidation Trust subject to amendment not later than five days before the Confirmation Hearing. A copy of the Liquidation Trust Agreement is attached to the Plan as **Exhibit A**.

**"Liquidation Trustee"** means the person or entity who shall become trustee of the Liquidation Trust upon the Effective Date.

**"Litigation Claims"** means any Claim, Avoidance Action, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment,

6

account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertible directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law, including but limited to any and all claims against the Debtor's former officers that are covered under policies of insurance.

**"Net"** means, with respect to Cash proceeds received from the disposition or collection of any particular asset, the Cash proceeds remaining after payment of (i) all taxes related to the disposition or collection of such assets, (ii) any incurred or anticipated costs of administering the Liquidation Trust, and (iii) all costs and expenses related to the Disposition, collection, enforcement, settlement, pursuit, improvement, maintenance, and operation of such assets, including, without limitation, brokers' fees and expenses and attorneys' fees and expenses.

**"Non-Tax Priority Claim"** means a Class 1 Claim, other than an Administrative Expense Claim or Priority Tax Claim, that is entitled to priority in payment pursuant to sections 507(a)(3), (4), (5), (6), (7) or (9) of the Bankruptcy Code.

**"Other Secured Claim"** means a Secured Claim other than the Bank Claim.

**"Petition Date"** means April 30, 2019, the date on which the Debtor filed its petition for relief commencing the Chapter 11 Case.

**"Plan"** means this Plan and all supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

**"Plan Proponents"** means the Debtor and the Committee.

**"Priority Tax Claim"** means a Claim of a Governmental Unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**"Professional"** means (a) any professional employed in the Chapter 11 Case pursuant to section 327 or 1103 of the Bankruptcy Code or otherwise, and (b) any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

**"Record Date"** means the record date for purposes of making distributions under the Plan on

7

account of Allowed Claims, which date shall be the Effective Date.

**"Replacement Liens"** has the meaning ascribed to it in the Cash Collateral Orders.

**"Replacement Lien Collateral"** means all Assets securing the Replacement Liens, as identified in the Cash Collateral Orders.

**"Secured Claim"** means a Claim that is secured by a Lien on property in which the Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Debtor's Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of a setoff, pursuant to section 553 of the Bankruptcy Code.

**"Trust Assets"** means all Assets of the Estate that will be transferred to the Liquidation Trust, including the Liquidation Proceeds and all other property of the Estate.

**"Unimpaired Claim"** means a Claim that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.2** **Rules of Interpretation and Computation of Time**. For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or schedule, Filed or to be Filed, means such document or schedule, as it may have been or may be amended, modified or supplemented pursuant to this Plan; (d) any reference to an entity as a Holder of a Claim includes that entity's successors and assigns; (e) all references in this Plan to Sections, Articles and Schedules are references to Sections, Articles and Schedules of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules will apply; and (i) in computing

8

any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) Bankruptcy Local Rule 9013-3(a) will apply.

## ARTICLE II

## <u>CLASSIFICATION OF CLAIMS</u>

**2.1** <u>**Unclassified Claims**</u>. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified.

**2.2** <u>**Classification of Claims**</u>. A Claim shall be included in a particular Class only to the extent that the Claim qualifies within the description of that Class and shall be classified in a different Class or Classes to the extent that any remainder of such Claim qualifies for the description of such different Class or Classes. A Claim is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released or otherwise settled before the Effective Date. The Bankruptcy Court shall have exclusive jurisdiction over any dispute concerning the classification of Claims, and resolution of any such dispute shall not be a condition precedent to entry of a Confirmation Order or consummation of this Plan. The Claims against the Debtor are classified as follows:

(i) <u>**Class 1 – Non-Tax Priority Claims**</u>. <u>Class 1 Claims consist of all Allowed Claims that are Non-Tax Priority Claims, if any.</u>

(ii) <u>**Class 2 – Secured Bank Claim**</u>. Class 2 Claims consist of the Allowed Bank Claim that is a Secured Claim.

(iii) <u>**Class 3 – Unsecured Claims**</u>. Class 3 Claims consist of all Allowed Claims that are General Unsecured Claims, including Claims that are allowed pursuant to order of the Bankruptcy Court, Claims allowed pursuant to sections 502(g), 502(h) and 502(i) of the Bankruptcy Code, and deficiency Claims allowed pursuant to section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012.

(iv) <u>**Class 4 – Other Secured Claims**</u>. Class 4 Claims consist of all Allowed Claims that are Other Secured Claims.

9

**3.1** **Unclassified Claims**.

(i) ***Administrative Claims***. Each Holder of an Allowed Administrative Claim entitled to priority pursuant to sections 507(a)(2) or 507(b) of the Bankruptcy Code shall be paid by the Disbursing Agent in full, without interest, or on such other terms as may be agreed upon by such Holder and the Debtor or the Liquidation Trustee, on the Effective Date or as soon thereafter as may be practicable, *provided*, *however*, that if such Holder's Administrative Claim is (a) disputed as to amount, validity, priority or enforceability or (b) subject to setoff by reason of an action that is or may be brought by the Debtor or the Liquidation Trust, or otherwise, then such Administrative Claim shall be payable only to the extent allowed by order of the Bankruptcy Court. Furthermore, no payment on account of an Administrative Claim for a Professional's fees allowable pursuant to sections 330 and 331 of the Bankruptcy Code and Bankruptcy Rule 2016, or any other applicable provision shall be made until such Claim is Allowed by order of the Bankruptcy Court. Bankruptcy fees accrued and payable pursuant to 28 U.S.C. § 1930 through and including the Effective Date shall be paid in full on or before the Effective Date.

(ii) ***Priority Tax Claims***. Each Holder of an Allowed Claim for taxes entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code shall be paid by the Disbursing Agent in full, without interest, or on such other terms as may be agreed upon by such Holder and the Debtor or the Liquidation Trustee, on the Effective Date or as soon thereafter as may be practicable.

**3.2** **Unimpaired Classes of Claims**.

(i) ***Class 1 Non-Tax Priority Claims***. Class 1 Claims are not Impaired under the Plan. Under this Plan, each Holder of an Allowed Non-Tax Priority Claim shall be paid by the Disbursing Agent in full, without interest, or on such other terms as may be agreed upon by such Holder and the Debtor, on the Effective Date.

**3.3** **Impaired Classes of Claims**.

(i) ***The Class 2 Secured Bank Claim***. The Class 2 Bank Claim is Impaired under the Plan. Under this Plan, the Holder of the Allowed Class 2 Bank Claim shall: (a) subject to the

10

Committee's and/or Liquidation Trustee's rights to challenge the Bank Liens during the 90-Day Challenge Period and prosecute to conclusion any challenge brought during the 90-Day Challenge Period, (i) retain past the Effective Date its pre-Petition Date Liens on the Bank Collateral and its Replacement Liens on the Replacement Lien Collateral, and (ii) retain all payments or other distributions made by the Debtor to the Bank prior to the Effective Date to the extent that such payments or other distributions are Bank Collateral in which the Bank has an unavoidable Lien; and (b) receive on the Effective Date, or as soon thereafter as may be practicable, but in any event, after the conclusion of the 90-Day Challenge Period and the prosecution of any challenge brought during the 90-Day Challenge Period, the Liquidation Proceeds of the Bank Collateral and the Replacement Lien Collateral. Any balance of the Class 2 Bank Claim, to the extent not secured by the Bank Collateral or Replacement Lien Collateral or not satisfied from the Liquidation Proceeds of such collateral, shall be treated as a Class 3 Claim.

(ii) *Class 3 General Unsecured Claims*. Class 3 Claims are Impaired under the Plan. Under this Plan, each Holder of an Allowed Claim that is a General Unsecured Claim shall receive on the Effective Date, or as soon thereafter as may be practicable, an amount equal to such Holder's pro rata share of the Liquidation Proceeds remaining after payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, and Allowed Secured Claims.

(iii) *Class 4 Other Secured Claims*. Class 4 Claims are Impaired under the Plan. Under this Plan, each Holder of an Allowed Other Secured Claim shall, at the election of the Liquidation Trustee, (a) have the collateral securing its Secured Claim abandoned to it, (b) be entitled, upon the Effective Date, to exercise any and all rights related to (i) foreclosure and realization upon its collateral, or (ii) setoff under Bankruptcy Code § 553, as the case may be, or (c) be paid the amount of its Allowed Other Secured Claim in full, in Cash, on or as soon as practicable after the later of (i) the Effective Date, (ii) the date any such Claim becomes an Allowed Claim, or (iii) the date on which sufficient Net proceeds are generated from the Disposition of the collateral securing such Claim. Any balance of a Class 4 Claim, to the extent not secured by Collateral or not satisfied from the Liquidation Proceeds of such collateral, shall be treated as a Class 3 Claim.

11

**3.4** **Retention of Defenses and Rights of Setoff Regarding Claims**. Except as otherwise provided in the Plan, nothing shall prejudice the Debtor's, the Liquidation Trustee's and the Disbursing Agent's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights of setoffs or recoupment with respect to such Claims.

## ARTICLE IV

## ACCEPTANCE OR REJECTION OF THE PLAN

**4.1** **Impaired Classes of Claims Entitled to Vote**. Subject to Section 4.5 of the Plan, the Holders of the Class 2 Secured Bank Claim, Class 3 General Unsecured Claims, and Class 4 Other Secured Claims are entitled to vote to accept or reject this Plan.

**4.2** **Acceptance by Impaired Classes**. In accordance with section 1126(c) of the Bankruptcy Code and except as provided under sections 1126(e) & (g) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

**4.3** **Acceptance by Unimpaired Classes and Unclassified Claims**. Pursuant to section 1126(f) of the Bankruptcy Code, each Unimpaired Class of Claims is presumed to have accepted the Plan and, therefore, votes to accept or reject this Plan will not be solicited from such Classes. Holders of Class 1 Allowed Non-Tax Priority Claims will be paid in full on the Effective Date. To the extent that a Holder of a Class 1 Non-Tax Priority Claim does not file a timely and proper objection to the Plan in accordance with the requirements set forth herein, such Holder may be deemed to have accepted the treatment as set forth in Article III of the Plan.

**4.4** **Cramdown**. If any Impaired Class of Claims entitled to vote shall not accept the Plan by the requisite majorities provided in section 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, the Plan Proponents reserve the right to (i) amend the Plan, or (ii) to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code, or (iii) both amend this Plan and seek Confirmation of any amended plan pursuant to section 1129(b) of the Bankruptcy Code.

12

# ARTICLE V

## IMPLEMENTATION OF THE PLAN

**5.1**     **Conditions to Effective Date**.  Unless waived by the Plan Proponents, the following are conditions precedent to the occurrence of the Effective Date: (a) the Confirmation Order, in a form reasonably satisfactory to the Plan Proponents, that approves all of the terms and conditions of the Plan and all distributions to be made pursuant thereto, shall have been entered by the Bankruptcy Court and shall be a Final Order, and no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, shall remain pending; (b) no stay shall be in effect with respect to the Confirmation Order; and (c) all documents, agreements and instruments required for the consummation of this Plan shall have been executed, shall not be subject to dispute, and shall be valid and legally binding obligations of the parties thereto.   Until the foregoing conditions are satisfied or waived in accordance with the preceding sentence, the Estate shall remain vested in the Debtor as debtor in possession.

**5.2**     **Funding**.    In accordance with sections 1123(a)(5)(D) and 1123(b)(4) of the Bankruptcy Code, all Assets of the Estate shall be sold, otherwise liquidated, distributed, or abandoned.   As of the Effective Date, the Liquidation Proceeds, and the Assets of the Estate, including all Cash of the Estate, shall be transferred, conveyed and assigned to the Liquidation Trust.

**5.3**     **Liquidation Trust**.  On or before the Effective Date, the Debtor shall establish a liquidation trust in accordance with the Liquidation Trust Agreement.  On the Effective Date, the Debtor shall be deemed to have transferred the Liquidation Proceeds and all other Assets of the Estate to the Liquidation Trust pursuant to the terms of the Liquidation Trust Agreement.   A Liquidation Trustee acceptable to the Plan Proponents shall be appointed pursuant to the Liquidation Trust Agreement and shall be responsible for liquidating and administering the Trust Assets and for all distributions pursuant to the Plan.  On the Effective Date, subject to approval of the Bankruptcy Court, the Liquidation Trustee shall become the appointed representative of the Estate in accordance with section 1123(b)(3) of the Bankruptcy Code, shall assume all liabilities of the Estate and shall pay such liabilities as provided under this Plan.

**5.4**     **Liquidation Trustee**.  The Liquidation Trustee shall be a person who has previously

13

qualified and served as a bankruptcy trustee, plan administrator or liquidating trustee in a case pending in the Northern District of California, and subject to Court approval. The Liquidation Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidation Trust Agreement. The Liquidation Trustee may retain counsel and other professionals as the Liquidation Trustee, in his sole discretion, deems appropriate, without further order of the Bankruptcy Court, to assist the Liquidation Trustee in performing his duties, rights and obligations under this Plan.

     **5.5**    **<u>Disbursing Agent</u>**. The Liquidation Trustee shall also as the Disbursing Agent for the purpose of implementing the Plan.

     **5.6**    **<u>Liquidation Trustee's and Disbursing Agent's Rights, Powers and Duties</u>**. On and after the Effective Date, as set forth in the Liquidation Trust Agreement, the Liquidation Trustee and Disbursing Agent shall have, among others, the following rights and powers (including all of the rights and powers of a trustee appointed under the Bankruptcy Code) with respect to the implementation of this Plan:

        (i)     To invest all Cash of the Liquidation Proceeds;

        (ii)    To make all required distributions under this Plan;

        (iii)   To employ, supervise and compensate Professionals retained to represent the interests of the Liquidation Trustee in connection with this Plan;

        (iv)   To make and file tax returns as required by applicable state, federal or local laws;

        (v)    To object to Claims Filed or otherwise asserted against the Debtor, the Estate and property of the Debtor or the Estate;

        (vi)   To seek an estimation of contingent or unliquidated Claims under section 502(c) of the Bankruptcy Code;

        (vii)  To seek the determination of the Debtor's tax liabilities under section 505 of the Bankruptcy Code;

        (viii) To prosecute all Litigation Claims whether pending as of the Effective Date or commenced thereafter, including but not limited to any and all claims against the Debtor's former

14

officers that are covered under policies of insurance;

        (ix)     To sell the Assets free and clear of all liens, claims and interests to the fullest extent provided in section 1123(a)(5)(D) of the Bankruptcy Code;

        (x)     To surcharge the Assets and their proceeds for costs of preservation and disposition to the fullest extent provided in section 506(c) of the Bankruptcy Code;

        (xi)     To amend or modify this Plan in accordance with section 1127 of the Bankruptcy Code; and

        (xii)     To file and prosecute such motions, applications or other pleadings in the Bankruptcy Court or other appropriate forum, and exercise all other powers and rights, and take all other actions necessary or appropriate to implement this Plan.

**5.7**     **Exculpation and Indemnification of the Liquidation Trust and Liquidation Trustee**.

**From and after the Effective Date, to the fullest extent permitted by applicable law, the Liquidation Trustee and each of the Liquidation Trustee's representatives shall not have and shall not incur any liability to any Person from any and all claims, causes of action and other assertions of liability arising out of the discharge of the powers and duties conferred upon the Liquidation Trustee by the Plan, the Liquidation Trust or any court order after the Effective Date pursuant to or in furtherance of the Plan, the Liquidation Trust or applicable law, or otherwise, except for willful misconduct or gross negligence as determined by a Final Order. No Holder of a Claim, or any other party in interest, will have or pursue any claim or cause of action against the Liquidation Trustee, the Liquidation Trust or their respective representatives, for making payments or distributions in accordance with the Plan or for implementing the provisions of this Plan, except for claims of willful misconduct or gross negligence. Any act or omission taken that is consistent with the provisions of the Plan, the Liquidation Trust or court order, will be conclusively deemed not to constitute gross negligence or willful misconduct. To the fullest extent permitted by applicable law, the Liquidation Trust will indemnify, hold harmless, defend and reimburse the Liquidation Trustee and each of his designated representatives from and against any and all losses, claims,**

15

**causes of action, damages, fees, expenses, liabilities and actions for any act or omission taken pursuant to the Plan, the Liquidation Trust or court order, except for willful misconduct or gross negligence as determined by a Final Order. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan and the closing of the Chapter 11 Case.**

**5.8   Post-Confirmation Management**.   From and after the Effective Date, the Liquidation Trustee shall manage the Liquidation Trust and control and perform all post-Confirmation responsibilities, including implementation of the Plan. From and after the Effective Date, all fees shall be paid to the Liquidation Trustee and any other Professionals retained by the Liquidation Trustee without approval of the Bankruptcy Court.

**5.9   Record Date for Distributions**.  At 5:00 p.m. prevailing Pacific time on the Record Date, the transfer records for Allowed Claims shall be closed, and there shall be no further changes in the Holders of record of any Allowed Claims. Neither the Debtor, the Liquidation Trustee nor the Disbursing Agent shall be obligated to recognize the transfer of any Allowed Claims after the Record Date but shall be entitled to recognize, for all purposes hereunder, only those Holders of record as of 5:00 p.m. prevailing Pacific time on the Record Date.

**5.10   Fractional Dollars; De Minimis Distributions**.   Notwithstanding any other provision of this Plan, (a) the Liquidation Trustee and Disbursing Agent shall not be required to make distribution or payments of fractions of dollars, and whenever any payment of a fraction of dollars under this Plan would otherwise be called for, the actual payment made shall reflect a rounding of such fraction to the nearest whole dollar, with one-half (1/2) dollar being rounded down, and (b) the Liquidation Trustee and Disbursing Agent shall not have any obligation to make any distribution to a specific Holder of an Allowed Claim if the amount to be distributed to that Holder on the relevant Distribution Date is less than $10.

**5.11   Executory Contracts and Unexpired Leases**.   All executory contracts and unexpired leases that (i) the Debtor entered into prior to the Petition Date, (ii) are executory as of the Effective Date, and (iii) have not been assumed or rejected pursuant to section 365 of the Bankruptcy Code before the Effective Date, shall be deemed rejected as of the Effective Date;

16

*provided, however*, that no such rejection shall occur as to any policies of insurance in force as of the Effective Date under which the Debtor is an insured. Any Claim arising from such rejection under this Plan shall be filed within thirty (30) days of the Effective Date or forever be barred from recovery against the Estate.

**5.12    Disputed Claims**.  The Liquidation Trustee and Disbursing Agent reserve all rights to prosecute any and all timely Filed objections to Claims, including Administrative Claims, after the Confirmation Date.  Any such objection shall be litigated to decision or settled after such notice and opportunity for hearing as shall be appropriate in the Bankruptcy Court's discretion.    No disbursement shall be made on account of any Claim, including any Administrative Claims, as to which an objection has been interposed, or as to which a counterclaim or setoff has or may be asserted, unless and until the objection, counterclaim or setoff is resolved by a Final Order.  The Liquidation Trustee or Disbursing Agent shall reserve sufficient funds to satisfy any Disputed Claim to the extent provided for in this Plan.

**5.13    Effect of Appeals**.  Provided that the Confirmation Order is not stayed pending appeal, the Plan Proponents may consummate the Plan notwithstanding such pending appeal, or the timely service and filing of a motion pursuant to Bankruptcy Rules 7052, 7062, 8002(b), 8002(c), 8003, 8015, 9023 or 9024.

**5.14    Unclaimed Disbursements**.  All distributions made pursuant to this Plan that are not negotiated within ninety (90) days after the relevant Distribution Date and that consequently become unclaimed shall revert to and become property of the Liquidation Trust, free and clear of any and all Claims, Interests, demands and causes of action, but subject to further redistribution in accordance with the Plan.

**5.15    Injunction**.  **Except for such actions as Holders may take to prosecute or defend their respective Claims in the Bankruptcy Court, entry of a Confirmation Order will operate as an injunction against the commencement or continuation of an action, the employment of process, or any act to collect, recover or offset any Claim of any Holder until the entry of a final decree or the dismissal of the Chapter 11 Case.**

**5.16    Retention of Claims**.  Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, the

17

Litigation Claims shall be retained, prosecuted and enforced by the Liquidation Trustee.

**5.17** **Continued Corporate Existence**.  Subject to the provisions of this Plan, the Debtor shall continue to exist after the Effective Date as a separate corporation, in accordance with applicable law and pursuant to its articles of incorporation as amended and in effect prior to the Effective Date, provided however, that the purpose of the Debtor shall be limited to taking such actions as are necessary to implement, and are consistent with implementing, this Plan.  On the Effective Date, the Liquidation Trustee shall be deemed to be sole director of the Debtor.  Any dispute as to the propriety of any action sought to be taken by the Debtor shall be resolved by the Bankruptcy Court.  Subject to the provisions of this Plan, as soon as practicable after the Liquidation Trustee makes the final distribution of Cash under this Plan and the Liquidation Trust Agreement, the Liquidation Trustee shall effectuate the dissolution of the Debtor in accordance with applicable law.  On the Effective Date, all Assets of the Debtor and the Estate shall vest in the Liquidation Trust.

**5.18** **Amendments, Modifications, Revocation and Interpretation of the Plan**.  Before the Confirmation Date, the Plan Proponents may alter, amend, modify or withdraw the Plan at any time subject to section 1127 of the Bankruptcy Code.  In the event that inconsistencies exist between the Plan and the Disclosure Statement, the Plan shall govern.

**5.19** **Exemption from Certain Transfer Taxes**.  Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security or the making or delivery of any instrument of transfer under this Plan, including the transfer of the Liquidation Proceeds and all other property of the Estate to the Liquidation Trust, may not be taxed under any law imposing a stamp tax or similar tax.  Any sale of any property of the Liquidation Trust occurring on or after the Effective Date shall be deemed to be in furtherance of this Plan.

**5.20** **Jurisdiction**.  The entry of a Confirmation Order shall not diminish or impair the Court's subject matter jurisdiction.  Until the entry of a final decree, the Court shall retain subject matter jurisdiction of the Chapter 11 Case, and all proceedings arising therein or related thereto, including proceedings that aid the consummation of this Plan, to the fullest extent permissible under applicable law.  Without limiting the generality of the foregoing, the Bankruptcy Court shall retain

18

jurisdiction over:

(i) **_Claims_**. To determine the allowance, classification, or priority of Claims against the Debtor;

(ii) **_Actions_**. To determine all applications, motions, adversary proceedings, contested matters, Litigation Claims, and any other litigated matters instituted in the Chapter 11 Case or on behalf of the Debtor or the Liquidation Trust;

(iii) **_Professional Fees_**. To determine any and all applications by Professionals for compensation and reimbursement of expenses before the Effective Date, as provided for in the Plan;

(iv) **_Injunctions_**. To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Court in the Chapter 11 Case on or before the Effective Date;

(v) **_Priority Claims and Administrative Claims_**. To determine the allowance and classification of any Priority Tax Claim, Non-Tax Priority Claims, Administrative Claims, or any request for payment of an Administrative Claim;

(vi) **_Secured Claims_**. To determine the validity, priority or extent of any Secured Claims.

(vii) **_Dispute Resolution_**. To resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of Professional fees and expenses of the Liquidation Trustee;

(viii) **_General Matters_**. To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or may be authorized under provisions of the Bankruptcy Code;

(ix) **_Plan Modification_**. To modify the Plan under section 1127 of the Bankruptcy

19

Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purpose;

        (x)     ***Aid Consummation***.  To issue such orders in aid or consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any entity, to the full extent authorized by the Bankruptcy Code;

        (xi)     ***Implementation of Confirmation Order***.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

        (xii)     ***Enforcement of Orders***.   To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

        (xiii)     ***Taxes***.   To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

        (xiv)     ***Post-Effective Date Professionals***.   To hear and determine disputes with respect to the Liquidation Trustee's Professionals; and

        (xv)     ***Final Decree***.  To enter a Final Decree closing the Chapter 11 Case.

Dated: July 25, 2019                **TRODELLA & LAPPING LLP**

                                    **WENDEL, ROSEN, BLACK & DEAN LLP**

                                    By:  */s/ Richard A. Lapping*
                                        Richard A. Lapping
                                        Attorneys for ANKA Behavioral
                                        Health, Incorporated

                                    **FOX ROTHSCHILD LLP**

                                    By: */s/ Michael A. Sweet*

                                        Michael A. Sweet
                                        Attorneys for the Official Committee of
                                        Unsecured Creditors

# Exhibit A

## ANKA LIQUIDATION TRUST AGREEMENT

# ANKA LIQUIDATION TRUST AGREEMENT

This Anka Liquidation Trust Agreement (the "Trust Agreement"), dated as of _____, 2019, is made by and among Anka Behavioral Health Incorporated, a California corporation ("Anka" or the "Debtor"), and _____ (the "Trustee"). This Trust Agreement is being entered into in connection with the *Plan of Liquidation for Debtor Jointly Proposed by Debtor and Committee* (the "Plan")[1], which was confirmed by the Bankruptcy Court's Confirmation Order entered on _____, 2019 (the "Confirmation Order"), and provides for, inter alia:

(a)     The transfer of the Assets of the Debtor and the Debtor's chapter 11 estate (the "Estate") required by the Plan to be transferred as of the Effective Date to the Liquidation Trust for Distribution to the holders of Allowed Claims (the "Beneficiaries") pursuant to and in accordance with this Trust Agreement, the Plan and the Confirmation Order;

(b)     For federal income tax purposes, (i) the Beneficiaries of the Liquidation Trust to be treated as the grantees of the Liquidation Trust and deemed to be the owners of the Trust Assets and (ii) the Debtor to treat the transfer of the Trust Assets to the Liquidation Trust as a deemed transfer to such Beneficiaries followed by a deemed transfer by such Beneficiaries to the Liquidation Trust;

(c)     The management of the Trust Assets[2] by the Trustee in conjunction with the Trust Oversight Committee (hereinafter defined); and

(d)     The liquidation of the Trust Assets and, after payment of expenses in accordance with the terms of this Trust Agreement, the distribution of the proceeds of such liquidation to the Beneficiaries as set forth in the Plan.

NOW, THEREFORE, pursuant to the Plan and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the parties hereby agree as follows:

---

[1] Any capitalized term contained herein without definition shall have the meaning ascribed to it in the Plan and any capitalized term used, but not immediately defined, in this Trust Agreement shall have the meaning ascribed to such term later or elsewhere in this Trust Agreement.

[2] As used herein, the term "Trust Assets" means Assets of the Debtor and the Estate required by the Plan to be transferred as of the Effective Date to the Liquidating Trust for distribution to the holders of Allowed Claims pursuant to and in accordance with this Trust Agreement, the Plan and the Confirmation Order, which include, without limitation, Cash, the Property, the Litigation Claims (including any and all claims against the Debtor's former officers that are covered under policies of insurance), the proceeds of the foregoing and any income earned thereon or additions thereto.

1

# I.
# DECLARATION OF TRUST

**1.1    Purpose of the Liquidation Trust**.  The Debtor and the Trustee, pursuant to the Plan and the Confirmation Order and in accordance with the Bankruptcy Code, applicable tax statutes, rules and regulations, to the extent incorporated in this Trust Agreement, hereby constitute and create the Liquidation Trust for the purpose of winding down the affairs of the Debtor and liquidating the Trust Assets with no objective to continue or engage in the conduct of a trade or business.   In particular, the Liquidation Trust, through the Trustee and with the assistance of the Trust Oversight Committee, shall (i) collect and reduce the Trust Assets to Cash, (ii) resolve any issues concerning the amount of the Claims of the Beneficiaries, (iii) prosecute, abandon, settle and/or defend any Litigation Claims which are a part of the Trust Assets; (iv) make distributions to the Beneficiaries pursuant to the Plan and this Trust Agreement, and (v) perform all actions required under the Plan and take such steps as are reasonably necessary to accomplish such purpose, all as more fully provided in, and subject to the terms and provisions of the Plan, the Confirmation Order and this Trust Agreement.  The Liquidation Trust shall not have authority to engage in a trade or business, and no portion of the Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary to the prompt and orderly collection and reduction to the Trust Assets to Cash and closing the case.

**1.2    Name of the Liquidation Trust**.  The Liquidation Trust established hereby shall be known as the "Anka Liquidation Trust".  In connection with the exercise of its powers, the Trustee may use such name or such variation thereof as it sees fit, and may transact the business and affairs of the Liquidation Trust in such name.

**1.3    Transfer of Assets to Create Liquidation Trust**.  The Debtor and the Estate hereby grant, release, assign, transfer, convey and deliver the Trust Assets to the Liquidation Trust as of the Effective Date, to have and to hold unto the Trustee and his or her successors in trust and to be applied as specified in the Plan, the Confirmation Order and this Trust Agreement. To the extent required, the Debtor shall cause the Trust Assets to be transferred to the Liquidation Trust.  Upon the transfer of the Trust Assets to the Liquidation Trust, and except as otherwise provided herein or in the Plan or Confirmation Order, such assets shall become Trust Assets and the Debtor shall retain no interest in such Trust Assets.  After confirmation of the Plan, the Debtor shall execute and deliver or cause to be executed and delivered to or upon the order of the Trustee all such documents, in recordable form where necessary or appropriate, and the Debtor shall take or cause to be taken such further or other action, as the Trustee may deem appropriate, to vest or perfect in or confirm to the Trustee, or upon the order of the Trustee, title to and possession of all of the Trust Assets. In addition all attorney-client, attorney work product and any and all other privileges held by the Debtor shall also be transferred and be held by the Liquidation Trust, and by such transfer the Debtor does not intend for such privileges to be waived.

**1.4    Status of Trustee**.  The Trustee shall be the exclusive trustee of the Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. §6012(b)(3), as well as the "representative of the estate" as that phrase is used in Bankruptcy Code section 1123(b)(3)(B) with respect to the

2

rights and powers granted in this Trust Agreement, the Plan and the Confirmation Order. Except as otherwise set forth in the Plan, the Trustee shall be the successor-in-interest to the Debtor with respect to the Trust Assets, including any Litigation Claims which were, or could have been commenced by the Debtor prior to the Effective Date and shall be deemed substituted for the same as the party in such Litigation Claim.

**1.5    Acceptance by Trustee**.  The Trustee hereby accepts (a) the appointment to serve as Trustee; (b) the transfer of the Trust Assets on behalf of the Liquidation Trust; and (c) the trust imposed on him by this Trust Agreement.  The Trustee agrees to receive, hold, administer and distribute the Trust Assets and the income derived therefrom, if any, pursuant to the terms of the Plan, the Confirmation Order and this Trust Agreement.

# II.
## TRUSTEE - GENERALLY

**2.1    Appointment**.  The initial Trustee shall be _____.

**2.2    Term of Service**.  The Trustee shall serve until (a) the termination of the Liquidation Trust in accordance with Article X of this Trust Agreement, or (b) the Trustee's resignation, death or removal in accordance with this Trust Agreement.

**2.3    Services**.  The Trustee shall be entitled to engage in such other activities as he deems appropriate which are not in conflict with the Plan, this Trust Agreement, or the interests of the Beneficiaries.  The Trustee shall devote such time as is necessary to fulfill all of its duties as Trustee.

**2.4    Resignation, Death or Removal of Trustee**.  The Trustee may resign at any time upon thirty (30) days' written notice, in accordance with the notice provisions of the Plan, to the Bankruptcy Court, the Trust Oversight Committee and the United States Trustee.  Such resignation shall become effective prior to the expiration of such thirty (30) day notice period upon the appointment of a permanent or interim successor Trustee.  The Trustee may be removed for cause by the Trust Oversight Committee, without further order of the Bankruptcy Court; provided, however, in any such case, removal shall be in good faith and can be challenged by the Trustee by making an application to the Bankruptcy Court during which challenge period the Trustee shall remain with all rights and obligations under the this Trust Agreement.  "Cause" for removal of the Trustee shall include negligence, fraud, and wrongful action or inaction in the performance of his or her duties, as required hereby.  Upon the resignation, death or removal of the Trustee, the Trust Oversight Committee shall appoint the successor Trustee.  In its discretion the Trust Oversight Committee may appoint an interim successor Trustee pending its appointment of a permanent successor Trustee.  Upon appointment pursuant to this Section 2.4 of the Trust Agreement, the successor Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his, her or its predecessor.

**2.5    Trust Continuance**.  The death, resignation or removal of the Trustee shall not terminate the Liquidation Trust or revoke any existing agency (other than any agency of such Trustee as the trustee of the Liquidation Trust) created pursuant to this Trust Agreement or invalidate any action theretofore taken by the Trustee.  By accepting the position as Trustee or

3

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

Interim Trustee, such successor Trustee agrees that the provisions of this Trust Agreement shall be binding upon and inure to the benefit of such successor Trustee and all his, her or its heirs and legal and personal representatives, successors or assigns.

**2.6     Compensation and Expenses of Trustee**.   The Trustee shall be entitled to receive compensation for his or her services in the amount of 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and 3 percent on any amount in excess of $1,000,000, of Liquidation Proceeds that are collected by the Liquidation Trust and disbursed to the Beneficiaries, together with actual and necessary costs and expenses associated with such collection efforts.

**2.7     Retention and Compensation of Professionals**.

(a)     The Trustee, in consultation with the Trust Oversight Committee, may retain and engage such professionals, consultants and persons, without Bankruptcy Court authorization and/or order, as may be necessary to carry out its duties under this Trust Agreement (the "Trustee's Professionals") on any terms and conditions he or she deems appropriate, including, without limitation, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis.

(b)     The Trustee's Professionals shall submit invoices to the Trustee on such periodic basis as the Trustee requests, and the Trustee may pay, without Bankruptcy Court authorization and/or order, the amounts requested from the amount of Liquidation Proceeds collected as a result of such professional's services or the proceeds thereof.  In order to seek payment, each Trustee's Professional will send its invoice to the Trustee; in the event the Trustee objects to a portion of such Trustee's Professional's invoice and the parties are unable to resolve the objection, the Trustee's Professional may bring the matter before the Bankruptcy Court for determination by motion after giving twenty-eight (28) days' notice.  The Trustee's Professionals may only be paid from the Liquidation Proceeds and the proceeds thereof to the extent there are sufficient funds available from which to make such payments, and the Trustee shall not be liable (be it in a personal, direct or indirect, or derivative manner) to any of the Trustee's Professionals for any unpaid invoices or claims for services rendered.

**2.8     Court Approval for Payment**.   Notwithstanding the foregoing paragraphs 2.6 and 2.7, the Trustee may in his or her sole discretion, but shall not be obligated to, seek Bankruptcy Court authorization before the payment of any fees and expenses to the Trustee or Trustee's Professionals.

### III.
### POWERS AND LIMITATIONS OF TRUSTEE

**3.1     General Powers of Trustee**.   In connection with the administration of the Liquidation Trust, except as otherwise set forth herein, the Trustee is authorized to perform those acts that in his or her business judgment are reasonable to accomplish the purposes of the Liquidation Trust.  The Liquidation Trust shall succeed to all of the rights of the Debtor necessary to protect, conserve and liquidate all Trust Assets, including, but not limited to, any

4

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

legal privilege, as quickly as reasonably practicable. Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Trustee may exercise all powers granted him or her hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets. Trustee shall be expressly authorized, without limitation, to take such actions permitted under state law and the following actions:

(a) To open and maintain bank accounts on behalf of or in the name of the Liquidation Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidation Trust.

(b) To hold legal title to any and all Trust Assets.

(c) To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Trust Agreement, and to ultimately close the Chapter 11 Case.

(d) To make all Distributions to holders of Allowed Claims (the Beneficiaries hereunder) provided for or contemplated by the Plan.

(e) To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(f) To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Trust Agreement, the Confirmation Order and the Plan.

(g) To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidation Trust.

(h) To pay all lawful, expenses, debts, charges and liabilities of the Liquidation Trust.

(i) To make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Liquidation Proceeds, the fees and expenses of Trustee's Professionals that provided services that enabled the collection of such Liquidation Proceeds, as well as the disbursements, expenses or related support services relating to the performance by the Trustee of its duties under this Trust Agreement, without application to, authorization and/or order of the Bankruptcy Court.

(j) Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all Litigation Claims (including but not limited to any any all

5

claims against the Debtor's former officers that are covered under policies of insurance) and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other non-judicial proceeding and litigate or settle such Litigation Claims on behalf of the Debtor or the Estate, and pursue such actions to settlement or final order, all in accordance with the terms of this Trust Agreement.

(k)     To object to Claims, supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with this Trust Agreement, Plan and Confirmation Order. Specifically, the Trustee may compromise or settle any such Claim (disputed or otherwise), free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or this Trust Agreement.

(l)     Exercise such rights of setoff as the Debtor or the Estate may have or have had against any Beneficiary and/or seek Court approval of such exercise.

(m)     To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidation Trust and (iv) pay taxes, if any, payable by the Liquidation Trust.

(n)     To perform any other actions or duties required to be performed by the Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

**3.2    Limitations on the Trustee**.  Notwithstanding anything in this Trust Agreement to the contrary, the Trustee shall not do or undertake any of the following:

(a)     Take any action in contravention of the Plan, the Confirmation Order or this Trust Agreement.

(b)     Take any action that would jeopardize treatment of the Liquidation Trust as a "liquidating trust" for federal income tax purposes.

(c)     Grant liens on any of the Trust Assets, provided that the foregoing shall not apply to any statutory or other involuntary liens.

(d)     Not less than one time each quarter (and more than that if reasonably requested by the Trust Oversight Committee), report to the Trust Oversight Committee regarding the affairs of the Liquidation Trust.

(e)     The investment powers of the Trustee are those designed to maintain the value of the Trust Assets and are limited to powers to invest in demand and time deposits, such as short-term certificates of deposits, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury bills.

6

Case: 19-41025     Doc# 235     Filed: 07/25/19     Entered: 07/25/19 16:54:58     Page 27 of 42

**3.3    Oversight Committee Consultation**.  Notwithstanding anything to the contrary in the Plan or herein, the Trustee shall consult with the Trust Oversight Committee prior to taking any action, which consultation may be by email upon 3 business days' negative notice, regarding any of the following matters:

(a)    The commencement of any Litigation Claim against any third parties;

(b)    The settlement, compromise, withdrawal, dismissal or other resolution of any (i) Claims or Objections to Claims by the Trust where the amount set forth in the Claim exceeds $50,000 of the amount set forth in the Trust's books and records as being owed pursuant to such claim; and (ii) Litigation Claim by the Liquidating Trust if the amount sought to be recovered in the complaint or other document initiating such Litigation Claim exceeds $50,000;

(c)    The sale, transfer, abandonment, assignment, or other disposition of any Trust Assets having a valuation in excess of $10,000;

(d)    The exercise of any right or action set forth in this Agreement that expressly requires consultation with the Oversight Committee;

(e)    The amount and timing of distributions from the proceeds of Trust Assets;

(f)    The opening, maintaining and administering of bank accounts as necessary to discharge the duties of the Trustee under the Plan and this Agreement; or

(g)    The payment of the Trustee's fees from the Liquidation Proceeds.

**3.4    Trustee Conflicts of Interest**.  If the Trustee determines, in the exercise of the Trustee's discretion, that he or she has a material conflict of interest with respect to any matter, the Trust Oversight Committee shall at its sole option and in its sole and absolute discretion either (i) exercise the Trustee's rights and authorities with respect to such matter, or (ii) designate a person to act on behalf of the Liquidation Trust solely with respect to such matter with such designee's authority to act on behalf of the Liquidation Trust to terminate upon the matter's conclusion.  Any such designee shall be compensated for his or her fees and costs incurred in representing the Trust in a reasonable amount to be agreed upon by the Trustee and the Trust Oversight Committee.  If neither the Trustee nor the Trust Oversight Committee is able (or willing) to act on behalf of the Liquidation Trust (and the Trust Oversight Committee is unable or unwilling to appoint a designee to so act on behalf of the Liquidation Trust) with respect to any matter, the Trustee, after notice to the United States Trustee for the Northern District of California ("U.S. Trustee") and the Trust Oversight Committee, may request that the Bankruptcy Court approve the Trustee's choice of a designee to act on behalf of the Liquidation Trust solely with respect to such matter, with such designee's authority to act on behalf of the Liquidation Trust to terminate upon the matter's conclusion.

**IV.**
**TRUST OVERSIGHT COMMITTEE, GENERALLY**

7

**4.1    The Trust Oversight Committee**.  On the Effective Date, a governing board of three persons identified on Schedule A that are among those that currently serve on the Committee shall commence serving as Members of a committee charged with oversight of the administration of the Liquidation Trust (the "Trust Oversight Committee").  The members of the Trust Oversight Committee are each persons (each, a "Member") and each have been selected by the Committee.  The identity of each Member is set forth on Schedule A attached hereto, together with a list of individuals who have been designated as Representatives of Members and other individuals who have the authority to attend meetings of the Trust Oversight Committee on behalf of a particular Member. The Trust Oversight Committee shall have general oversight powers for the activities of the Trustee as well as those specific rights and powers set forth in other provisions of this Trust Agreement and under the Plan.

**4.2    Authority and Responsibilities**.  The Trust Oversight Committee shall have the authority and responsibility to oversee, review, and guide the activities and performance of the Trustee and shall have the authority to remove the Trustee in accordance with Section 2.4 hereof. The Trust Oversight Committee shall also (a) monitor and review the fairness of settlement, abandonment and other disposition proposals proposed to or conditionally agreed to[3] by the Trustee with respect to the Litigation Claims (including any counterclaims), (b) monitor and oversee the administration of the Trust and the Trustee's performance of its responsibilities under this Trust Agreement and the Plan, and (c) perform such other tasks as set forth in this Trust Agreement, Plan and Confirmation Order.   In all circumstances, except as explicitly provided herein, the Trustee and the Trust Oversight Committee shall exercise its respective responsibilities under the Liquidation Trust consistent with fiduciary standards.   In all circumstances, the Trustee and the Trust Oversight Committee shall act in the best interests of all Beneficiaries and in furtherance of the purpose of the Liquidation Trust.   The Trustee shall consult with and provide information to the Trust Oversight Committee on a regular basis in accordance with and pursuant to the terms of this Trust Agreement, the Plan and the Confirmation Order.

**4.3    Meeting of the Trust Oversight Committee**.  Meetings of the Trust Oversight Committee are to be held bi-annually or with such frequency and at such place as the Trustee and the Members may determine in their reasonable discretion.  Upon reasonable notice under the circumstances, special meetings of the Trust Oversight Committee may be held whenever and wherever called for by the Trustee or at least one Member.   Unless the Trust Oversight Committee decides otherwise (which decision shall rest in the sole discretion of the Trust Oversight Committee, whether or not such decision is reasonable), the Trustee and his or her designated advisors may attend meetings of the Trust Oversight Committee. The Trust Oversight Committee may adopt such procedures as it deems fit for the governance of Trust Oversight Committee meetings.

---

3 A condition being the obtaining of the consent of the Trust Oversight Committee if and when required under this Trust Agreement.

8

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

**4.4    Tenure of the Members of the Trust Oversight Committee**.  The authority of the Members will be effective as of the Effective Date and will remain and continue in full force and effect until the Liquidation Trust is terminated in accordance with Article X hereof.  The Members of the Trust Oversight Committee will serve until death or resignation pursuant to Section 4.5 below, or removal pursuant to Section 4.6 below.

**4.5    Resignation**.  A Member may resign by giving not less than thirty (30) days' prior written notice thereof to the Trustee and the other Members.  Such resignation shall become effective on the earlier to occur of: (i) the day specified in such notice; and (ii) the appointment of a successor in accordance with Section 4.7 below.

**4.6    Removal**.  A Member may be removed by the unanimous vote of the other Members, written resolution of which shall be delivered to the removed Member; provided, however, that such removal may only be made for Cause.  "Cause" for removal of a Member shall include negligence, fraud, and wrongful action or inaction in the performance of his or her duties, as required hereby

**4.7    Appointment of a Successor Trust Oversight Committee Member**.

(a)    In the event of a vacancy on the Trust Oversight Committee (whether by removal, death, or resignation) that would leave fewer than two Members on the Trust Oversight Committee, a new Member may be appointed to fill such position by the remaining Member or the Trustee.  The appointment of a successor Member of the Trust Oversight Committee will be evidenced by the remaining Member filing with the Bankruptcy Court of a notice of appointment of a new Member to the Trust Oversight Committee, which notice will include the name, address, and telephone number of the successor Member.

(b)    Immediately upon the appointment of any successor Member, all rights, powers, duties, authority, and privileges of the predecessor Member hereunder will be vested in and undertaken by the successor Member without any further act; and the successor Member will not be liable personally for any act or omission of the predecessor Member.

(c)    Every successor Member appointed hereunder shall execute, acknowledge and deliver to the Trustee and other Members an instrument accepting the appointment under this Trust Agreement and agreeing to be bound thereto, and thereupon the successor Member without any further act, deed, or conveyance, shall become vested with all rights, powers, trusts, and duties of the retiring Member.

**4.8    Joint Interest Privilege**.  It is expressly acknowledged that the members of the Trust Oversight Committee and the Trustee share a joint interest in the successful prosecution of the Litigation Claims and entry into an arrangement to share information based upon such joint interest will be deemed sufficient to preserve and protect privilege.

**V.**
**LIABILITY OF TRUSTEE AND MEMBERS OF**
**TRUST OVERSIGHT COMMITTEE**

9

**5.1     Trustee and Members of Trust Oversight Committee Standard of Care; Exculpation**.  Neither the Trustee, any partner, member, officer, affiliate, employee, employer, professional, agent or representative of the Trustee or any Member or any of its members, partners, shareholders, trustees, officers, affiliates, employees, employers, professionals, agents or representatives ("Indemnified Persons") shall be personally liable in connection with the affairs of the Liquidation Trust to any Person, including any Beneficiary of the Liquidation Trust, or to the Liquidation Trust, except for acts or omissions of the Indemnified Person that constitute fraud, willful misconduct, or gross negligence.  Persons dealing with Indemnified Persons in connection with the Liquidation Trust, or seeking to assert claims against the Liquidation Trust, shall have recourse only to the Trust Assets to satisfy any liability incurred by the Indemnified Persons to such persons in carrying out the terms of this Trust Agreement, except for acts or omissions of the Indemnified Persons that constitute fraud, willful misconduct or gross negligence.

**5.2     Indemnification**.  Except as otherwise set forth in the Plan or Confirmation Order, Indemnified Persons, including, without limitation, any firm in which the Trustee or Member is a partner, member, shareholder or employee ("Firm") shall be defended, held harmless and indemnified from time to time by the Liquidation Trust against any and all losses, claims, costs, expenses and liabilities to which such Indemnified Persons may be subject by reason of such Indemnified Party's execution in good faith of its duties pursuant to the discretion, power and authority conferred on such Person by this Trust Agreement, the Plan or the Confirmation Order; provided, however, that the indemnification obligations arising pursuant to this section shall not indemnify any Indemnified Person for any actions taken by an Indemnified Person which constitute bad faith, fraud, willful misconduct, gross negligence, willful disregard of his or her duties hereunder, or willful material breach of the Plan or Confirmation Order.  Satisfaction of any obligation of an Indemnified Person arising pursuant to the terms of this Section 5.2 shall be payable only from the Trust Assets and such right to payment shall be prior and superior to any rights of Beneficiaries to receive a Distribution of the Trust Assets.

**5.3     No Liability for Acts of Predecessor Trustees**.  No successor Trustee shall be in any way liable for the acts or omissions of any predecessor Trustee unless a successor Trustee expressly assumes such responsibility.

**5.4     Reliance by Trustee and Members on Documents, Mistake of Fact or Advice of Counsel**.  Except as otherwise provided in this Trust Agreement, the Trustee and each Member may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Trustee or Member, as the case may be, to be genuine and to have been presented by an authorized party.  The Trustee and each Member shall not be liable if he, she, or it acts based on a mistake of fact before having actual knowledge of an event or for any action taken or suffered by such person if such person has reasonably relied upon the advice of Trustee's Professionals in accordance with this Trust Agreement.

**VI.**
**DUTIES OF TRUSTEE**

10

**6.1    General**.  The Trustee shall have all duties specified in the Plan, the Confirmation Order and this Trust Agreement as being the responsibility of the Trustee.

**6.2    Books and Records**.  The Trustee shall maintain in respect of the Liquidation Trust, books and records relating to the Trust Assets, income realized therefrom and expenses of and claims against or assumed by the Liquidation Trust, in such detail and for such period of time as may be necessary to enable it to make full and proper reports in respect thereof.  Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, nothing in this Trust Agreement is intended to require the Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidation Trust, or as a condition for making any payment or Distribution out of the Trust Assets.  Notwithstanding the foregoing, the Trustee shall disseminate periodic reports to the Members regarding the Trust Assets and the Trust expenses.

**6.3    Final Report To Court Prior to Final Distribution**.  Before making his or her Final Distribution, the Trustee shall file a written report with the Bankruptcy Court (which report shall constitute the final accounting of the Liquidation Trust) showing the assets administered, the distributions made by the Trustee and the Final Distributions to be made by the Trustee (the "Final Liquidation Trustee Accounting Report").  A draft of the Final Liquidation Trustee Accounting Report shall be provided to the Trust Oversight Committee for its review and comment a minimum of ten (10) days before it is filed with the Court.  The Trustee shall provide notice by regular, first-class mail to all Beneficiaries of the filing of the Final Liquidation Trustee Accounting Report.  Any Beneficiary who fails to file and serve on the Trustee a written objection to any Liquidation Trustee Accounting Report or to the Final Liquidation Trustee Accounting Report within twenty (20) days after such report or account is filed shall be deemed to have assented thereto and approved the contents thereof.  Any objection to any report or accounting shall be resolved by the Bankruptcy Court.  If no objection is filed to the Final Liquidation Trustee Accounting Report within the time frame set forth above, then, upon making the Final Distribution in the manner set forth in the Final Liquidation Trustee Accounting Report, the Trustee, the Members and all Trustee's Professionals shall be: (a) fully discharged of their duties hereunder and under the Trust Agreement, Plan and Confirmation Order; and (b) fully discharged and released from all duties, liabilities and obligations of every kind and nature to the Beneficiaries, except as is expressly set forth in this Trust Agreement to the contrary; provided, however, that the foregoing shall not relieve the Trustee or the Members from liability for gross negligence, fraud, willful misconduct, self-dealing or breach of fiduciary duty in the conduct of their duties as set forth herein.

**6.4    Final Accounting of Trustee Upon His or Her Termination**.  Within thirty (30) days after a Trustee's announced resignation or removal, such Trustee or former Trustee, as the case may be, shall render a final accounting (the "Outgoing Trustee's Final Accounting") containing at least the following information:

(a)    A description of the Trust Assets as of the last day of such Trustee's service hereunder;

11

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

(b)     A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and other transactions in connection with the Liquidation Trust and the Trust Assets during the Trustee's term of service, including their source and nature;

(c)     Separate entries for all receipts of principal and income;

(d)     The ending balance of all Trust Assets as of the date of the Trustee's accounting, including the Cash balance on hand and the name and location of the depository where it is kept: and

(e)     All known liabilities owed by the Liquidation Trust, other than prepetition Claims of Beneficiaries.

The Outgoing Trustee's Final Accounting shall be presented to the Bankruptcy Court for approval after a draft of same has been reviewed by the Trust Oversight Committee. The U.S. Trustee shall give notice that the Outgoing Trustee's Final Accounting has been filed and an opportunity to have a hearing on the approval of the Outgoing Trustee's Final Accounting and the discharge of the Trustee.

# VII.
## BENEFICIARIES

**7.1     Effect of Death, Incapacity or Bankruptcy of Beneficiary**.  The death, incapacity or bankruptcy of a Beneficiary during the term of the Liquidation Trust shall not operate to terminate the Liquidation Trust, nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Trust Agreement or in the Liquidation Trust.

**7.2     Standing of Beneficiary**.  Except as expressly provided in this Trust Agreement, the Plan or the Confirmation Order, a Beneficiary does not have standing to direct the Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Trustee) upon or with respect to the Trust Assets.

**7.3     Release of Liability by Beneficiary**.  A Beneficiary shall not relieve the Trustee from any duty, responsibility, restriction or liability as to such Beneficiary that would otherwise be imposed under this Trust Agreement unless such relief is approved by Final Order of the Bankruptcy Court.

# VIII.
## DISTRIBUTIONS

**8.1     Distributions from Trust Assets**.  All Distributions of Trust Assets made by the Trustee to the Beneficiaries shall be made only in accordance with the Plan, the Confirmation Order and this Trust Agreement. Any Distribution made by the Trustee in good faith shall be binding and conclusive on all interested parties.

12

**8.2** **Annual Distributions; Withholding**. To the extent that sufficient funds are contained in the Liquidation Trust from which to make a Distribution, the Trustee shall make Distributions at least annually commencing December 15, 2020, to the Beneficiaries from all net Cash income and all other Cash held in the Liquidation Trust. All such Distributions shall be made as provided, and subject to any withholding, in this Trust Agreement, the Plan or the Confirmation Order. Additionally, the Trustee may withhold from amounts distributable to the Beneficiaries any and all amounts, determined in the Trustee's reasonable sole direction, to be required by any law, regulation, rule, ruling, directive or other governmental requirement. In no event shall the Trustee be required to make any Distribution if the same would be administratively burdensome or unreasonably expensive in relation to the dollar amount of the total cash to be distributed.

Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order. Unless otherwise agreed by the Trustee, a Beneficiary who holds both (an) Allowed Claim(s) and (a) Disputed Claim(s) will not receive a Distribution on account of either the Allowed Claim or the Disputed Claim, nor accrue interest thereon, unless the Allowed Claim is at least three hundred percent (300%) or more than the amount of the filed amount of the Disputed Claim or until such Disputed Claim is resolved by settlement or Final Order.

**8.3** **Non-Cash Property**. Any Trust Asset that is not Cash may be sold, transferred or abandoned by the Trustee, after consultation with the Trust Oversight Committee, provided however, no consultation with the Trust Oversight Committee is required if (i) the item being sold, transferred or abandoned has a fair market value of less than $10,000 and in the Trustee's judgment, cannot be sold in a commercially reasonable manner, or (ii) in the case of a Litigation Claim, such Litigation Claim would cost more to prosecute than the likely recovery from the prosecution of such Litigation Claim. If, in the Trustee's judgment, after consultation with the Trust Oversight Committee, any Trust Asset which is not cash and which is reasonably valued by the Trustee at $50,000 or less and cannot be sold in a commercially reasonable manner, the Trustee shall have the right to abandon or otherwise dispose of such property, including by donation of such property to a charity designated by the Trustee. Until such time as the Chapter 11 Case is closed, notice of such sale, transfer or abandonment shall be filed with the Bankruptcy Court. Except in the case of willful misconduct, no party in interest shall have a cause of action against the Liquidation Trust, the Trustee, any Member or any partner, Member, officer, employee, consultant of or professional employed by the Trustee in connection with the Liquidation Trust arising from or related to the disposition of non-Cash property in accordance with this Section 8.3.

**8.4** **Method of Cash Distributions**. Any Cash Distribution to be made by the Liquidation Trust pursuant to the Plan will be in U.S. dollars and may be made, at the sole discretion of the Trustee, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

**8.5** **Distributions on Non-Business Days**. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

13

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

Case: 19-41025    Doc# 235    Filed: 07/25/19    Entered: 07/25/19 16:54:58    Page 34 of 42

# IX.
# TAXES

**9.1     Income Tax Status**.  Consistent with the Revenue Procedure 94-45, 1994-28 I.R.B. 124, the Liquidation Trust shall be treated as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust pursuant to Sections 671-677 of the Internal Revenue Code.  As such, the Beneficiaries will be treated as both the grantors and the deemed owners of the Liquidation Trust.  Any items of income, deductions and credit loss of the Liquidation Trust shall be allocated for federal income tax purposes, to the Liquidation Trust.

**9.2     Tax Returns**.  In accordance with Treasury Regulation Section 1.671-4(a), the Liquidation Trust shall file with the Internal Revenue Service annual tax returns on Form 1041 together with the separate statements required under such Regulation.  In addition, the Trustee shall file in a timely manner such other tax returns as are required by applicable law and pay any taxes shown as due thereon.  On and as of the Effective Date under the Plan, the Debtor, to the extent known, shall provide to the Trustee a schedule containing the name, address and tax identification number of each Beneficiary.  In addition, the Trustee may require that each Beneficiary provide and/or confirm such Beneficiaries' name, address and tax identification number as a condition to payment of any Distribution to such Beneficiary.

**9.3     Withholding of Taxes Related to Liquidation Trust Operations**.  To the extent that the operation of the Liquidation Trust or the liquidation of the Trust Assets creates a tax liability in excess of applicable net operating losses, the Liquidation Trust shall promptly pay such tax liability and any such payment shall be considered a cost and expense of the operation of the Liquidation Trust payable from the proceeds of other Trust Assets.  The Trustee may reserve a sum, the amount of which shall be determined by the Trustee in his or her sole discretion, sufficient to pay the accrued or potential tax liability arising out of the operations of the Liquidation Trust or the operation of the Trust Assets.  In the exercise of discretion and judgment, the Trustee may enter into agreements with taxing authorities or other governmental units for the payment of such amounts as may be withheld.

No later than the time required under applicable law after the end of each calendar year, the Trustee shall cause to be filed all required federal, state and other tax returns.  Pursuant to the requirement under the Plan for the Trust to be treated as a Grantor Trust, all items of income will be treated as income subject to tax on a current basis.  Further, for federal income tax purposes, all items of income, gain, loss, and deduction of the Trust for such calendar year shall be allocated to all Beneficiaries on a pro rata basis, based on either their Allowed Claim(s) or, in the case of Disputed Claims, the greater of (a) the amount of the claim as scheduled by the Debtor in its bankruptcy schedules and statement of financial affairs filed by the Debtor in the Chapter 11 Case and (b) the amount set forth in any proof of claim filed by the Beneficiary in the Chapter 11 Case.  Such pro-rata allocation will be calculated as of the end of each calendar year and, with respect to each Disputed Claim, until such claim either becomes an Allowed Claim or is disallowed.  Further, such pro rata allocation in regard to Disputed Claims shall not in itself entitle any Beneficiary to any payment and shall be irrespective of whether any payments are actually disbursed to such Beneficiary.

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

Case: 19-41025     Doc# 235     Filed: 07/25/19     Entered: 07/25/19 16:54:58     Page 35 of 42

As a condition to making any distribution under this Trust Agreement and the Plan, each Beneficiary shall be required to provide its taxpayer identification number on IRS Form W-9 and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.  Notwithstanding any other provision of the Plan, Claims of Beneficiaries who do not provide such information within 30 days of such request shall be expunged.

## X.
## TERMINATION OF TRUST

**10.1    Maximum Term**.  The Liquidation Trust shall commence as of the Effective Date and shall continue and remain in full force and until (i) the conclusion by settlement or Final Order of all pending litigation to which the Trustee is a party and, in the sole opinion and discretion of the Trustee, the exhaustion of all efforts to collect thereon, (ii) all of the Trust Assets are liquidated or disposed of in accordance with the Plan, Confirmation Order and this Trust Agreement and all of the funds in the Liquidation Trust have been completely distributed in accordance with the Plan, Confirmation Order and this Trust Agreement, (iii) all tax returns and any other filings or reports have been filed with the appropriate state or federal regulatory authorities and all time periods and all opportunity for such authorities to challenge such final tax returns have expired, and (iv) the order closing the Chapter 11 Case is a Final Order (the "Trust Term").

**10.2    Distribution Upon Termination**.  Upon the termination of the Liquidation Trust, the Trustee shall distribute the remaining Trust Assets, if any, to the Beneficiaries, in accordance with the Plan, Confirmation Order and this Trust Agreement.

**10.3    Winding Up and Discharge of the Trust**.  For the purposes of winding up the affairs of the Liquidation Trust at its termination, the Trustee shall continue to act as Trustee and the Members shall continue to act as members of the Trust Oversight Committee through the Trust Term.  After the Trust Term, the Trustee, its agents and employees and the Members, their agents and employees shall have no further duties or obligations hereunder, except as required by this Trust Agreement, the Plan, the Confirmation Order or applicable law concerning the termination of a trust.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its agents and employees and the Members, their agents and employees of any further duties, discharging the Trustee and releasing his or her bond, if any.

## XI.
## ADMINISTRATIVE EXPENSES

**11.1    Paid From Collection of Liquidation Proceeds**.  The cost and expenses of the Liquidation Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual and necessary costs, fees and expenses of the Trustee including, without limitation, the fees, costs and expenses of the Trustee's Professionals, shall be paid from the collection of Liquidation Proceeds.

## XII.
## MISCELLANEOUS PROVISIONS

15

**12.1 Amendments**. The Trustee may propose to the Bankruptcy Court the modification, supplementation or amendment of this Trust Agreement following consultation with the Trust Oversight Committee. Such modification, supplementation or amendment shall be in writing and filed with the Bankruptcy Court. No modification, supplementation or amendment of this Trust Agreement shall be effective except upon a Final Order of the Bankruptcy Court.

**12.2 Waiver**. No failure by the Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**12.3 Cumulative Rights and Remedies**. The rights and remedies provided in this Trust Agreement, the Plan and Confirmation Order are cumulative and are not exclusive of any under law or in equity and may be exercised at any time or times and in any order of preference.

**12.4 No Bond Required**. Except as otherwise provided for in the Plan or Confirmation Order, notwithstanding any state law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

**12.5 Irrevocability**. The Liquidation Trust is irrevocable.

**12.6 Relationship to the Plan**. The principal purpose of this Trust Agreement is to aid in the implementation of the Plan and Confirmation Order and, therefore, this Trust Agreement incorporates and is subject to the provisions of the Plan and the Confirmation Order. In the event that any provision of this Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provisions of the Plan or the Confirmation Order shall control.

**12.7 Division of Trust**. Under no circumstances shall the Trustee have the right or power to divide the Liquidation Trust unless authorized to do so by the Bankruptcy Court.

**12.8 Governing Law**. This Trust Agreement shall be governed and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws.

**12.9 Retention of Jurisdiction**. Notwithstanding the occurrence of the Effective Date and to the fullest extent permitted by law, the Bankruptcy Court shall retain exclusive jurisdiction over the Liquidation Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, including, without limitation, this Trust Agreement, or any entity's obligations incurred in connection herewith, including without limitation, any action against the Trustee or any Trustee's Professional, in each case in its capacity as such. Each party to this Trust Agreement hereby irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court in any action to enforce, interpret or construe any provision of this Trust Agreement or of any other agreement or document delivered in connection with this Trust Agreement, and also hereby irrevocably waives any defense of improper venue, forum non-conveniens or lack of personal

16

jurisdiction to any such action brought in the Bankruptcy Court. Each party further irrevocably agrees that (i) any action to enforce, interpret or construe any provision of this Trust Agreement will be brought only in the Bankruptcy Court and (ii) all determinations, decisions, rulings and holdings of the Bankruptcy Court shall be final and non-appealable and not subject to re-argument or reconsideration. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address set forth in Section 12.12 of this Trust Agreement or such subsequent address as the party may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Trust Agreement.

**12.10 Severability**. In the event that any provision of this Trust Agreement or the application thereof to any person or circumstance shall be determined by the Bankruptcy Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Trust Agreement shall be valid and enforced to the fullest extent permitted by law.

**12.11 Limitation of Benefits**. Except as otherwise specifically provided in this Trust Agreement, the Plan or the Confirmation Order, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**12.12 Notices**. All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by facsimile with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses:

If to the Debtor:

With a copy to:

If to the Trustee:

17

If to the Trust Oversight Committee:

[To be determined and provided later]

Notice of any application to the Bankruptcy Court shall also be provided to the U.S. Trustee at the address as follows:

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands requests, consents, notices and communications shall be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

**12.13  Further Assurances**.  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Trust Agreement, and to consummate the transactions contemplated hereby.

**12.14  Integration**.  This Trust Agreement, the Plan and the Confirmation Order constitute the entire agreement by and among the parties, and there are no representations, warranties, covenants or obligations except a set forth herein, in the Plan and in the Confirmation Order.  This Trust Agreement, together with the Plan and the Confirmation Order, supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.  Except as otherwise provided herein, or in the Plan or Confirmation Order, nothing herein is intended or shall be construed to confer upon or give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Trust Agreement.

**12.15  Successors or Assigns**.  The terms of this Trust Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**12.16  Interpretation**.  The enumeration and section headings contained in this Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Trust Agreement or of any term or provision hereof.  Unless context otherwise requires, whenever used in this Trust Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations.  The words herein, hereby, and hereunder and words with similar import, refer to this Trust Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

18

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

**12.17 Counterparts**. This Trust Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document.

[REMAINDER OF PAGE LEFT BLANK – SIGNATURE PAGE(S) FOLLOWS

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

Case: 19-41025    Doc# 235    Filed: 07/25/19    Entered: 07/25/19 16:54:58    Page 40 of 42

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**ANKA BEHAVIORAL HEALTH INCORPORATED**, a California corporation,

By_____

_____, Solely in his or her capacity of Trustee of the Liquidating Trust

_____

Active\98037157.v6-7/22/19
Active\98037157.v7-7/24/19

## SCHEDULE A

## MEMBERS OF TRUST OVERSIGHT COMMITTEE (MEMBERS)

| Members | Representatives | Additional Authorized Representatives |
|---|---|---|
| Health Information Technology Care, LLC | Tony Niemotka | Denise Olrich<br><br>Adrian Williams<br><br>Sarah Hasselberg |
| Bershire Hathaway Homestate Insurance Company | Brandon Falley | Matt Eastwood |
| CallTower, Inc. | Chris Evans | Shawn Hansen |